Zel M. Fischer, Judge
Derrick Carrawell appeals his conviction of the class C felony of .possession of a controlled substance. § 195.202.[1] A police officer searched a plastic grocery bag that Carrawell was holding after he was already handcuffed and seated in the police car and discovered heroin. Carrawell argues the circuit court erred and abused its *836 discretion in overruling his motion to suppress evidence of the heroin because: (1) the State failed to show police had probable cause to arrest him for a peace disturbance, making the arrest unlawful, and (2) even if the arrest was lawful, the subsequent search of his plastic bag was unlawful. The circuit court’s judgment is affirmed.
Factual and Procedural History
In April 2012, four City of St. Louis police officers went to investigate complaints of increased gang activity in a particular neighborhood. While the officers were' speaking with several neighborhood residents outside an apartment building, Officer Curtis Burgdorf noticed a vehicle pull up nearby with the driver (Carrawell) staring at the officers for about 30 seconds before finally parking across the street. Carrawell then stepped out of the vehicle and, while staring at Officer Burgdorf, grabbed his crotch', spit in the officers’ direction, and said, “What the fuck are you looking at, bitch?” Carrawell then went around to the passenger-side door .'of the vehicle, removed a white plastic grocery bag, and continued to utter vulgarities towards the officers.
Noticing that Carrawell’s language was bothering the group of neighborhood residents (which included a young girl), Officer Burgdorf approached Carrawell and notified him he was under arrest for peace disturbance. Carrawellj with plastic'bag in hand, continued to walk away from’ the officer. Officer Burgdorf followed and, as ■ Carrawell attempted to open an apartment door, grabbed ahold of Carrawell. A struggle ensued as Officer Burgdorf attempted to handcuff Carrawell and repeatedly asked him to drop the plastic bag. Eventually, Officer Burgdorf was able to rip the plastic bag from Carrawell’s hands and it fell to the ground, producing a “breaking” sound. Officer Burgdorf then completed the handcuffing process, picked up the bag, and escorted Carrawell to the police car. Another struggle ensued while attempting to place Carrawell in the police car, at which point Officer Burgdorf set the plastic bag on top of the car’s trunk. After securing Carrawell in the police car, Officer Burgdorf—-for the first time— looked into the plastic bag.[2] Inside he discovered a broken ceramic plate and a smaller plastic bag containing a tan powder that Officer Burgdorf believed to be, and which was later confirmed to be, heroin.
Carrawell was charged with the class C ■felony of drug possession. Prior to trial, he filed a motion to suppress evidence of ■the heroin arguing that neither the arrest nor search of his plastic bag was lawful. The circuit court- held a hearing on the .motion and subsequently overruled it. The circuit court also oyerruled Carra-well’s continuing objection, based on the reasons set forth in the motion to suppress, during trial. Carrawell was convicted and sentenced to 12 years’ imprisonment. He then filed a motion for a new trial, which the circuit court aiso overruled. Carrawell now appeals, contesting the cir *837 cuit court’s ruling on his motibn to suppress.
Standard of Review
“At a hearing on a motion to suppress, the state bears both the burden of producing evidence and the risk of non-persuasion to show by a preponderance of the evidence that the motion to suppress should be overruled.” State v. Grayson, 336 S,W.3d 138,142 (Mo. banc 2011)’(inter-nal quotations omitted). “When reviewing the trial court’s overruling, of a motion to suppress, this Court considers the evidence presented at both the suppression hearing and at trial to determine whether sufficient evidence exists in the record to support the trial court’s ruling.” State v. Pike, 162 S.W,3d 464, 472 (Mo. banc 2005). “The Court defers to the trial court’s determination of credibility and factual findings, inquiring only whether the decision is supported by substantial evidence, and it will be reversed only if. clearly erroneous." State v. Goff, 129 S.W.3d 857„ 862 (Mo. banc 2004) (internal quotations omitted). “By contrast, legal determinations of reasonable suspicion and probable cause are reviewed de novo.” Grayson, 336 S.W.3d at 142.
Analysis
Carrawell argues evidence of the heroin in his possession should have been suppressed because his arrest and the search of his plastic -bag were unlawful under the Fourth Amendment to the United States Constitution and article I, section 15 of the Missouri Constitution, both of which protect against, unreasonable searches and seizures.[3] ‘When evidence is obtained in violation of the Fourth Amendment, the judicially developed exclusionary rule usually precludes its use in a criminal proceeding against the victim of the illegal search and seizure.” Illinois v. Krull, 480 U.S. 340, 347, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987). Carrawell asserts Officer Burgdorf did not have probable cause to arrest him for peace disturbance .because Carrawell .did not ■ do anything calculated to provoke a “breach of the peace.” He also asserts that the State failed to offer into evidence the city’s peace disturbance ordinance under which,Officer Burgdorf claimed to have arrested Carrawell. He argues that, because a court cannot simply take judicial notice of a municipal ordinance, there was no definition of “peace disturbance” before the circuit court by which it could determine whether there was probable cause to arrest' him' for the crime. Carrawell also argues that, even if the arrest was lawful, the search of his plastic bag was' unlawful because Carra-well had not abandoned the plastic-bag and the search did not qualify as a search incident to arrest. He further asserts that the search could not be justified under the inventory-search exception because the State failed to-produce evidence that the police department had standardized criteria or established routine for opening closed containers in an inventory search.
Carrawell’s Arrest Was Lawful
 “An arrest with or without a warrant requires probable cause, which simply means' a knowledge of facts and circumstances sufficient for a prudent person to believe the suspect is committing or has committed [an] offense.” State v. Heitman, 589 S.W.2d 249, 253 (Mo. banc *838 1979). Although Carrawell focuses on Officer Burgdorfs testimony that he arrested Carrawell for violating the city’s peace disturbance ordinance, this Court need not determine whether there was probable cause to arrest Carrawell for peace disturbance. This is because there was certainly probable cause to arrest Carrawell for resisting arrest. See § 575.150.1(1) (stating that a person commits the crime of resisting arrest when the person knows or reasonably should know that a police officer is attempting to arrest the person and the person resists the arrest “by using or threatening the use of violence or physical force or by fleeing' from such officer”).
Here,,there, was testimony that when Officer Burgdorf told Carrawell he was under arrest, Carrawell kept walking away, and that when Officer Burgdorf caught up to Carrawell, Carrawell continued to try to pull away from the officer’s grasp. Notably, it is no defense to resisting arrest “that the law enforcement officer was acting unlawfully in making the arrest.” Section 575.150.4. In determining whether Carrawell committed the crime of resisting arrest, therefore, there is no need to determine whether Officer Burgdorf could have lawfully arrested Car-rawell for -peace disturbance under the facts presented. For such purpose, it only matters that Carrawell indeed resisted an arrest, lawful or not. Because the evidence presented shows there was probable cause to conclude Carrawell resisted arrest, an arrest- of Carrawell was lawful.[4]
The Search of Carrawell’s Bag Was Not a Lawful Search Incident to Arrest, But the Exclusionary Rule Does Not Apply
Becaüse Carrawell’s arrest was lawful, the next question is whether the search of his plastic bag was lawful. War-rantless searches are per se unreasonable under the Fourth Amendment, unless an “established and well-delineated” exception applies. Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). One such exception is a search incident to a lawful arrest. United States v. Robinson, 414 U.S. 218, 224, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). Incident to arrest, officers may lawfully search “the arrestee’s person and the area ‘within his immediate control’—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.”' Chimel v. California, 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) (emphasis added). Here, although there was a lawful arrest, Officer Burgdorfs first search of Carrawell’s plastic bag occurred outside the police car, after Carrawell had already been handcuffed and'placed into the back of the police car. Thus, the plastic bag was not within Carrawell’s immediate control at the time of Officer Burgdorfs search. However, the court of appeals has previously indicated that an arrestee’s personal effects (e.g., a purse or backpack) may be searched even when they are not within the immediate control of the arrestee be *839 cause such a search qualifies as a search of the person—i.e., the personal effects are part of the person. See, e.g., State v. Ellis, 355 S.W.Sd 522, 524 (Mo.App.2011); State v. Rattler, 639 S.W.2d 277, 278 (Mo.App.1982). This reasoning is based on a misunderstanding of law and should no longer be foEowed.
In United States v. Chadwick, the Supreme Court of the United States made clear the reasoning for the search-incident-to-arrest exception:
The reasons justifying search in a’-custodial arrest are quite different. When a custodial arrest is made, there is always some danger that the person arrested may seek to use a weapon, or that evidence may - be concealed or destroyed. To safeguard himself and others, and to prevent the loss of evidence, it has been held reasonable for the arresting officer to conduct a prompt, warrantless search of the arrestee’s person and the area within his immediate control....
433 U.S. 1, 14, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977) (internal quotations omitted). The Supreme Court then announced the general rule:
Once law enforcement officers have reduced luggage or other personal property not immediately associated with the person of the arrestee to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident of the arrest. . ..
Id. at 15, 97 S.Ct. 2476. This principle was reaffirmed by the Supreme Court in Arizona v. Gant: “If there is no possibility that an arrestee could reach into the area that law enforcement officers seek to search, both justifications for the search-incident-to-arrest exception are absent and the rule does not apply.” 556 U.S. 332, 339, 129 S.Ct. 1710, 173. L.Ed.2d 485 (2009). In Gant, the Supreme Court held that police'may lawfully search" a Vehicle 'incident to arrest "in twó situátions: (1) “if the arrestee is within reaching distance of the passénger compartment at the time of the search” or (2) “it is reasonable to believe the vehicle contains evidence of the offense of arrest.” Id. at 351, 129 S.Ct. 1710. Although Gant involved the search of a vehicle, the Supreme Court’s holding is only unique to vehicles for the second category of situations. The first category is just a reiteration óf Chimel and Chadwick—that general rule applies to all searches incident to arrest, vehicle or not.[5] That is, if the item searched is not within the arrestee’s reaching distance (or “immediate control”) at the time of the search, the justifications for a search incident to arrest are absent and there is no valid search incident to arrest.[6]
*840 A major source of the court of appeals’ misunderstanding regarding this well-established rule appears to be based on language taken out of context from United States v. Edwards, in which the Supreme Court stated, “It is also plain that searches and seizures that could be made on the spot at the time of arrest may legally be conducted later when the accused arrives at the place of detention.” 415 U.S. 800, 80S, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974). This broad statement that the court of appeals has relied upon was only dicta. The holding of Edwards was much narrower: the clothes that this particular arres-tee was wearing at the time of arrest could be searched the next day at the station house because the police could not conduct the search contemporaneous with the arrest .as the arrestee was wearing the clothes and the police did not have a change of clothes for him. Id. at 805, 94 S.Ct. 1234. This was sound logic because “the person” of the arrestee in Edwards could not be separated from the arrestee’s clothes at the time of the arrest, and the justification of preventing destruction of evidence (paint chips embedded in the clothes) remained the next day. In light of Chimel, Chadwick, and Gant, though, the Supreme Court’s decision in Edwards should not be read to authorize the search of all personal effects incident to arrest regardless of whether the item searched is still within the immediate control of the arrestee at the time of the search. See United States v. Monclavo-Cruz, 662 F.2d 1285, 1289-90 (9th Cir.1981) (“[T]his broad statement in Edwards, in contrast to its holding, has been circumscribed by Chadwick . • •> [i]n light of these principles, we confine the Edwards exception to the person and clothing of an arrestee.”).
Therefore, the Edwards exception to the general rule requiring the item searched to be within the arrestee’s immediate control applies only to items that are so intertwined with the arrestee’s person that they cannot be separated from the person at the time of arrest. The language in Chadwick—“or other personal property not immediately associated with the person”—appears to merely be a nod to this rare Edwards exception where the personal property searched is not separable from the person. See Chadwick, 433 U.S. at 15, 97 S.Ct. 2476 (holding that luggage that was not within arrestee’s immediate control could not be searched incident to arrest). Unlike the clothing in Edivards, the plastic bag in this.case was easily separable from the arrestee’s per *841 son. Indeed, the Supreme Court of the United States has made no distinction between the luggage in Chadwick that could not be searched and other personal effects removed from a person, such as purses or shopping bags. Rather, the Supreme Court has lumped all of these items in the same category of “containers” that may be within , an arrestee’s immediate control, and therefore subject to a search incident to arrest. See New York v. Belton, 453 U.S. 454, 460 n. 4, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981) (noting that “containers” that may be within an arrestee’s reach include “luggage, boxes, bags, clothing, and the like”); see also State v. Perry, 499 S.W.2d 473, 475 (Mo.1973) (“[T]he officers had probable cause to make an arrest and in connection therewith to conduct a search of. the person of appellant and the area within her immediate control (the purse).”) (emphasis added). It is not that these items may be searched because they are part of the person; rather, they may be searched because they are within the arrestee’s immediate control. When that fact is no longer true, they may not be searched incident to arrest because the justifications for conducting such a search no longer persist. Gant, 556 U.S. at 339, 129 S.Ct. 1710; Chadwick, 433 U.S. at 15, 97 S.Ct. 2476. The court of appeals’ distinction for purses and other similar personal effects is not consistent with Supreme Court precedent.
The origin of this purse exception in the court of appeals appears to be State v. Woods, 637 S.W.2d 113 (Mo.App.1982). In Woods, the court of appeals held that a woman’s purse could be searched after she had already been taken to the police station because the purse.“was not so clearly distant from her at the police station as to make it impossible for her to gain access to it.” Id. at 116. The court of appeals then went on to, state, “We further note that a woman’s purse is, like the arrestee’s clothes in Edwards, more immediately associated with the person of the accused than is other personal property, such as luggage or an attache case.” Id. For support,- the court of appeals cited United States v. Berry, which stated, “[U]nlike a purse-that might be . characterized as ‘immediately associated with the person of the arrestee’ because it is carried with the person at all times, the attache case here was more like luggage560 F.2d 861, 864 (7th Cir.1977), vacated by United States v. Berry, 571 F.2d 2 (7th Cir.1978). Not only was the purse conclusion dicta, but the Berry court failed to compare a purse with the clothing in Edwards in terms of their differing qualities of separability from the person—the very quality that made the clothing in Edwards “immediately associated with the person.” The Berry opinion was also later vacated. United States v. Berry, 571 F.2d 2 (7th Cir.1978).
The court of appeals has also relied on United States v. Graham, 638 F.2d 1111 (7th Cir.1981), in support of its purse exception. See Ellis, 355 S.W.3d at 525. The concurring opinion relies on Graham as well, but the Graham court held that “a shoulder purse carried by a person at the time he is stopped lies within the scope of a warrant authorizing the search of his person.” 638 F.2d at 1114 (emphasis added). . It is important to note that the Graham court did not hold a purse is part of the person for purposes of a search incident to arrest. In fact, it did the opposite and distinguished a search incident to arrest from a search pursuant to a warrant, noting that “defendant is also mistaken in his contention that the rationale used to define the scope of a search incident to an arrest is equally applicable in defining the scope of a search of the person authorized by a warrant.” Id. The Graham court then discussed an Illinois case that held *842 “once the defendant was handcuffed and seated in the police squad car, and his purse was in the possession of the police, the reasons justifying a search incident to his arrest no longer existed with respect to the purse.” Id. Thus, any reliance on Graham by the concurring opinion or court of appeals to say a purse is part of the person for a -search incident to arrest misconstrues that case. If anything, Graham recognized the purse was not part of the person with respect to a search incident to arrest.[7] > -
The concurring opinion also suggests that under U.S. v. Robinson, 414 U.S. £18, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973), there is a “time of arrest” rule, meaning any personal effect in the arres-tee’s actual possession at'the time of the arrest may be searched, regardless of whether the item is within the arrestee’s immediate control at the time of the search, because a search of the arrestee’s person (including personal effects) requires “ ‘no additional justification’ beyond the validity of the custodial arrest.” This is not Robinson’s holding. The concurring opinion seizes on Robinson’s “no additional justification” language, but fails to provide context. In Robinson, the Supreme Court held:
A police officer’s determination as to how and where to search the person of a suspect whom he has arrested is .-necessarily a quick ad hoe judgment which the Fourth Amendment does not'require to be broken down in each instance into an analysis of each step in the search. The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect. A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment;' that intrusion being lawful, a search incident to the arrest requires no additional justification.
Id. at 235, 94 S.Ct. 467 (emphasis added). What the Supreme Court-meant by “no additional justification” was that police officers need no prerequisite objective'level of suspicion (e.g.,- probable cause) regarding the search itself—i.e., the officers need no reason to believe a person has, or an item contains, weapons or evidence in order to ensure their safety and the preservation of evidence in the flurry that is a custodial arrest. Id. Such objective level of suspicion would be an unnecessary “additional justification” to the two built-in justifications, officer safety and preventing destruction of evidence, that are already present in a search incident to arrest. Id.
Notably, the concurring opinion recognizes that these two justifications underlie a search incident to arrest, even one it would call a search under the “time of arrest” rule:
*843 Accordingly, when police seize an arres-tee, they necessarily also seize the arres-tee’s clothing and personal effects in the arrestee’s actual possession, ail of which may contain a weapon or evidence.,. .. The time of arrest rule recognizes that the same exigencies that justify searching an arrestee’s person under Robinson also justify searching the arrestee’s clothes and other items in the arrestee’s actual possession,
(emphasis added). These “same exigencies,” however, -cannot support a “time of arrest” rule. The two exigencies, or justifications, hinge on the spatial location of an item to an arrestee at the time of the search, not at the time of arrest. That is, even if the item to be searched was within the arrestee’s immediate control (or “on the person”) at the time of arrest, police need not be concerned with the arrestee inflicting harm with a weapon or destroying evidence when the hypothetical weapon or evidence is contained in an item no longer within the arrestee’s immediate control at the time of the search. The fact that the item was once within the arres-tee’s immediate control at the time of arrest has no impact on whether the justifications, or “exigencies,” still persist at the time of the search.
The Supreme Court’s clarification of Belton’s holding in Gant should have dispelled any notion of a “time of arrest” rule:
[Belton] has been widely understood to allow a vehicle search incident to the arrest of a recent occupant even if there is no possibility the arrestee could gain access to the vehicle at the time of the search. This reading may be attributable to Justice Brennan’s dissent in Bel-ton, in which he ."characterized the Court’s holding as resting on the “fiction ... that the interior of a car is always within the immediate control of an ar-restee who has recently been in the car.”
Under the majority’s approach, he argued, “the result would presumably be the same even if [the officer] had handcuffed, Belton and his companions in the patrol car” before conducting the search.
Since we decided Belton, Courts of Appeals have given different answers to the question whether a vehicle must be within an arrestee’s reach to justify a vehicle search incident to arrest, but Justice Brennan’s reading of the Court’s opinion has predominated. As Justice O’Connor observed, “lower court decisions seem now to treat the- ability to search a vehicle incident to the arrest of a recent occupant as a police entitlement rather than as an exception justified by the twin rationales of Chimel.” ... Indeed, some courts have upheld searches under Belton “even when ... the handcuffed arrestee had already left the scene.”
Under this'broad reading of Belton, a vehicle search would be authorized inci- . dent to every arrest of a recent occupant notwithstanding that in most cases the vehicle’s passenger compartment will not be within the arrestee’s reach at the time of the search. To read Belton as authorizing a vehicle search incident to every recent occupant’s arrest would .thus unteth.er the rule from the justifications, underlying the Chimel exception— a result clearly incompatible with our statement in Belton that it “in no way alters the fundamental principles established in the Chimel case regarding the basic scope of searches incident to lawful custodial arrests.” "Accordingly, we reject this reading of Belton and hold that the Chimel rationale authorizes police to search a • vehicle incident to a recent occupant’s arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search.
*844 Gant, 556 U.S. at 341-43, 129 ■ S.Ct. 1710 (internal citations omitted). Like the passenger compartment of an arrestee’s vehicle, an arrestee’s personal effects*may- no longer be within the arrestee’s immediate control at the time of the search, negating the Chimel rationales for ,a search incident to arrest. The Chimel rationales are the only rationales for the search-incident-to-arrest exception. See, e.g., Riley v. California, — U.S.—, 134 S.Ct. 2473, 2484, 189 L.Ed.2d 430 (2014) (“Gant, like Robinson, recognized that the Chimel concerns for officer safety and evidence preservation underlie the search incident to arrest exception.”). Contrary to the concurring opinion’s assertion, there simply is no separate rationale added by Robinson, which recognized that allowing searches incident to arrest is grounded solely in the need to protect officer safety and'prevent destruction of evidence. Seeid.‘, 414 U.S. at 234-35, 94 S.Ct. 467. As such, there is no Supreme Court authority for the concurring opinion’s “time of arrest” rule. This “time of arrest” rule is just as misguided as the flawed readings of Belton that the Supreme Court rejected—it “untether[s] the [search incident to arrest] rule from the justifications underlying the Chimel exception” and treats the ability to search an arrestee’s personal effects “as a police entitlement rather than as an exception justified by the twin rationales of Chimel.”[8] See Gant, 556 U.S. at 342-43, 129 S.Ct. 1710 (internal quotations omitted).
While there is no need for a “case-by-case adjudication” in every search incident to arrest concerning whether an officer had reason to believe an arrestee’s'personal effect contained a weapon or evidence, there certainly is a need for a'case-by-case adjudication when the underlying justifications for searching that personal effect no longer persist because the item was no longer within the arrestee’s immediate control. This principle was recently illuminated particularly well by the Supreme Court’s discussion in Riley concerning whether officers could search a cell phone that was seized and not within the arres-tee’s immediate control:
The United States and California both suggest that a search of cell phone data might help ensure officer safety in more indirect ways, for example by alerting officers that confederates of the arrestee are headed to the scene— The proposed consideration would also represent a broadening of Chimel’s concern that an arrestee himself might grab a weapon and use it against an officer to “resist arrest or effect his escape.” And any such threats from outside the arrest scene do not “lurk[ ] in all custodial arrests.” Accordingly, the interest in protecting officer safety does not justify dispensing with the warrant require *845 ment across the board. To the extent dangers to arresting officers -may be implicated in a particular way in a particular case, they are better addressed through consideration of case-specific exceptions to the warrant requirement, such as the one for exigent circum-stances_ And once law enforcement officers have secured a cell phone, there is no longer any risk that the arrestee himself will be able to delete incriminating data from the phone.... To the extent that law enforcement. still has specific concerns about the potential loss of evidence in a particular case... .they may be able to rely on exigent circumstances to search the phone immediately.
134 S.Ct. at 2485-87 (internal citations omitted) (emphasis added). Likewise, with any other personal effect, officers may not conduct a search incident to arrest when the arrestee himself cannot obtain a weapon or evidence from the personal effect; rather, any search of that personal effect must be grounded in another exception to the warrant requirement, such as an inventory search or exigent circumstances. See id.
Relevant to exigent circumstances, the concurring. opinion also appears to conflate the search-incident-to-arrest exception with the exigent-circumstances exception, implicitly suggesting that Officer Burgdorfs search was justified because Officer Burgdorf testified that he was concerned the bag may have contained a weapon and' “Officer Burgdorf looked into the bag because it would have been unreasonable to leave it behind and unsafe to bring..it into the police vehicle without knowing the nature and condition of the contents.” While the concurrihg opinion does not suggest the surrounding circumstances actually amounted to probable cause to believe the bag contained a weapon, concerns about the -bag’s, contents go toward the officer’s objective level of suspicion. As discussed above, level of suspicion, e.g.,' probable cause, plays no role in a search incident to arrest. Robinson, 414 U.S. at 235, 94 S.Ct. 467. It does, however,- factor into the exigent-circumstances exception. See, e.g., Florida v. Royer, 460 U.S. 491, 497, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) (“[I]t is unquestioned-that without a warrant to search Royer’s luggage and in the absence of probable cause and exigent circumstances, the validity of the search depended on Royer’s purported consent.”) (emphasis added); Chambers v. Maroney, 399 U.S. 42, 51, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970) (“Only-in exigent' circumstances will the judgment of the police as to probable cause, serve as . a sufficient authorization for a search.”). The state does not argue, and the record does not support the conclusion-, that a warrantless search of Car-rawell’s bag was justified by exigent circumstances supported by probable cause.
Here,, Carrawell was handcuffed and locked in the .back of a police car at the time Officer. Burgdorf searched the plastic bag. It. matters not whether this bag was more akin to luggage or more akin to a purse. Neither is part -of the person. It matters only whether the bag was within Carrawell’s immediate control. Because it was not, there was . not a valid search incident to arrest. E.g., United States v. Matthews, 532 Fed.Appx. 211, 218 (3d Cir.2013); United States v. Maddox,: 614 F.3d. 1046, 1049 (9th Cir.2010); People v. Redmond, 73 Ill.App.3d 160, 28 - IllDec. 774,390 N.E.2d 1364, 1374 (1979). The state., has not demonstrated any other exception to the warrant requirement applies.[9]
*846 That the search here was unlawful is not dispositive, however. “[W]hen an officer conducts a search incident to arrest in ‘objectively reasonable reliance’ on binding appellate precedent that is later overturned, the exclusionary rule does not suppress the evidence obtained as a result of that search.” State v. Johnson, 354 S.W.3d 627, 630 (Mo. banc 2011). “[T]he exclusionary rule Is triggered only when police practices are ‘deliberate enough to yield meaningful deterrence,- and culpable enough to be worth the price paid by the justice system.’ ” Id. at 633 (quoting Davis v. United States, 564 U.S. 229, 131 S.Ct. 2419, 2428, 180 L.Ed.2d 285 (2011)). “[OJfficers act in good faith when they objectively rely on binding directives from the judiciary and the legislature even though these directives may be later overturned.” Id. at 634. At the time of Officer Burgdorfs search, there was court of appeals precedent authorizing officers -to search an arrestee’s personal effects as a search incident to arrest, even if - such items were not within the arrestee’s immediate control. See, e.g., Ellis, 355 S.W.3d at 524-25. Although such searches should no longer be deemed 'lawful, the exclusionary rule will not apply to this case. Accordingly, the circuit court did not err or abuse its discretion in overruling Carra-well’s motion to suppress evidence of the heroin discovered in Carrawell’s plastic bag.
Conclusion
The warrantless arrest of Carrawell was lawful because there was probable cause to conclude Carrawell committed the crime of resisting arrest. The warrantless search of Carrawell’s plastic bag was not a lawful search incident tb arrest because the plastic bag was not within Carrawell’s immediate control at the time of the search. However, because there was court of appeals authority for conducting such a search, the exclusionary rule does not apply to this ease. The judgment is affirmed.
Stith, and Draper, JJ., concur;
Wilson, J., concurs in separate opinion filed;
Breckenridge, C.J., and Russell; J., concur in opinion of Wilson, J.;
Teitelman, J., concurs in part and dissents in part in separate opinion filed.

. Statutory citations are to RSMo Supp. 2013.

. In its discussion of the facts, the concurring opinion asserts that Officer Burgdorf could not "reasonably bring [the bág] into the patrol car without knowing what was in it 'and (given the breaking sound when the bag was first dropped) what condition those contents were in.” The record does not support this conclusion. At trial, Officer Burgdorf testified that he "overheard a breaking sound” when the bag fell to the'ground. He further testified, “With his.reluctance to let go of it or show me what was in there, I was concerned there may have been a weapon in there.”’ There Was no suggestion by Officer Burgdorf that he had any reason to believe the contents of the bag would have harmed the occupants of the patrol car while remaining in the bag.

. This Court interprets the Fourth Amendment of the United States Constitution and article I, section 15 of the Missouri Constitution to provide “the same guarantees against unreasonable search and seizures; thus, the same analysis applies to cases under the Missouri Constitution as under the United States Constitution.” State v. Oliver, 293 S.W.3d 437, 442 (Mo. banc 2009).

. This conclusion, does not depend, on which crime—peace disturbance or resisting arrest—Officer Burgdorf subjectively intended to arrest Carrawell. An officer’s “subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause.” Devenpeck v. Alford, 543 U.S. 146, 153, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004). That is, “the fact the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action.” Id. Although Officer Burgdorf may have intended to. arrest Carrawell for peace disturbance, the circumstances that then ¿rose, viewed objectively, justified an arrest based on Carrawell. committing the crime of resisting arrest.

. Like the search of Carrawell’s plastic bag, the unlawful search in Gant took place after the arrestee was handcuffed and placed-in the back of a police car. 556 U.S. at 336, 129 S.Ct. 1710.

. Despite what some cases may suggest, Chadwick was not abrogated by the Supreme Court’s decision in California v. Acevedo, 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991). Chadwick held that police need a warrant to search a container, unless an exception applies, like search incident to arrest—the exception addressed in Chadwick. 433 U.S. at 15, 97 S.Ct. 2476. Acevedo, in response to courts’ confusion concerning containers found within vehicles searched under the automobile exception, essentially added an exception" that may apply to a container, holding that "police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained.” 500 U.S. at 580, 111 S.Ct. 1982. Acevedo did not touch upon Chadwick’s analysis of searches incident to arrest, but only expanded the automobile exception to include probable cause analysis for containers found therein. See Acevedo, 500
*840 U.S. at 579, 111 S.Ct. 1982 (“We conclude that it is better to adopt one clear-cut rule to govern automobile searches and eliminate the warrant requirement for closed contain-ers_”) (emphasis added). Therefore, the two holdings co-exist. A container may be searched in the vehicle context .applying the Acevedo rule, or, if within an arrestee’s immediate control, the Chadwick rule. A container in the non-vehicle context may be searched applying the Chadwick rule.
Similarly, some cases suggested Chimel, the basis for Chadwick’s rule, was abrogated by the Supreme Court’s decision in New York v. Belton,- 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed,2d 768 (1981). See Davis v. .United States, 564 U.S. 229, 131 S.Ct. 2419, 2424, 180 L.Ed.2d 285 (2011) ("Numerous courts
read the [Belton] decision to authorize automobile searches incident to arrests of recent occupants, regardless of whether the arrestee in any particular case was within reaching distance of the vehicle at the time of the search.”). The Supreme Court dispelled this notion in Gant:
To read Belton as authorizing a vehicle search incident to every recent occupant’s arrest would thus untether the rule from the justifications underlying the Chimel exception—a result clearly incompatible with our statement in Belton that it "in no way alters the fundamental principles established in the Chimel case regarding the basic scope of searches incident to lawful custodial arrests.”
556 U.S. at 343, 129 S.Ct. 1710.

. While the Graham court stated that the search of the purse iij that particular case would have also fallen within the scope of a search incident to arrest, the court made this determination—not because the purse was part of the person*—but because it rejected the argument that the purse was within the “exclusive control” of the police when police searched the purse in the presence of an unsecured arrestee. 638-F.2d at 1112-1114. In determining such, the Graham court cited United States v. Garcia, 605 F.2d 349 (7th Cir.1979). Graham, 638 F.2d at 1113-114. The concurring opinion also curiously cites Garcia for support, although the search in Garcia occurred while the luggage was "within one foot” of an arrestee who was not handcuffed and, therefore, "the luggage continued to remain within her immediate reach.” 605 F,2d at 352, 356.

. The influence of the now-rejected broad reading of Belton on the concurring opinion’s "time of arrest” rule is especially evident in the concurring opinion's reliance on United States v, Fleming, 677 F.2d 602 (7th Cir. 1982), and Curd v. City Court of Judsonia, Ark., 141 F.3d 839 (8th Cir.1998). - Although the Fleming court upheld the search of a bag after the arrestee had been handcuffed and removed from the immediate vicinity, it did so by analogizing the search to the misinterpreted holding of Belton. See Fleming, 677 F.2d at 605, 607 (noting that "when the dccu-pant of-an automobile is arrested, the entire passenger compartment of the- car constitutes his ‘grabbing area’ and can be searched as an incident of the arrest,” and rejecting the argument that the arrestee "had no realistic chance to grab anything and therefore the need for a Chimel search no longer existed”). In Curd, the Eighth Circuit upheld the search of a purse after the arrestee had already been taken to a detention* center, citing to Belton for the proposition that "[i]t matters not whether Curd was capable of reaching the purse at the time of the search.” Curd, 141 F.3d at 841, 842 n.9.

. An exception for inevitable discovery via an inventoiy search—i.e, the police would have *846 inevitably discovered the heroin through a lawful inventory search at the police station— does not apply here. Under the inevitable discovery doctrine,
[Illlegally seized evidence may be admitted if the State proves by a preponderance of the evidence: (1) that certain standard, proper and predictable procedures of the local police department would have been utilized, and (2) those procedures inevitably would have led to discovery of the challenged evidence through the State’s pursuit of a substantial, alternative line of investigation at the time of the constitutional violation. The inevitable discovery analysis cannot involve speculation and must focus on demonstrated historical facts capable of ready verification or impeachment.
State v. Rutter, 93 S.W.3d 714, 726 (Mo. banc 2002) (internal citations omitted). Although there was testimony that the police depart- ‘ ment here routinely conducts inventory searches, there was no indication that the police department had a standard procedure , of always taking arrestees (or those arrested for peace disturbance or resisting arrest) to the police station, where they would be subject to an inventory search'. 'Thus, to apply thé inevitable discovery doctrine here would impermissibly involve speculation, as there is no evidence Carrawell would have been subjected to an inventory search absent the discovery of heroin.