

# SUPREME COURT OF MISSOURI
## en banc

CLETUS GREENE,     )  *Opinion issued September 3, 2019*
          )
    Appellant,   )
          )
v.           )  No. SC96973
          )
STATE OF MISSOURI,   )
          )
    Respondent.  )

### APPEAL FROM THE CIRCUIT COURT OF CAPE GIRARDEAU COUNTY
The Honorable Michael E. Gardner, Judge

Cletus W. Greene appeals the motion court's judgment overruling his Rule 29.15 motion for postconviction relief without an evidentiary hearing. He claims his trial counsel provided ineffective assistance in failing to seek suppression of methamphetamine found during a warrantless search of a cigarette pack seized from his pocket because the search occurred approximately 30 minutes after his arrest in an area outside Mr. Greene's immediate control.

The motion court did not err in overruling Mr. Greene's postconviction motion because trial counsel was not ineffective in failing to file a motion to suppress the evidence of methamphetamine found when Mr. Greene's cigarette pack was searched. A motion to suppress would not have been meritorious because the search of the cigarette pack was a

lawful search incident to arrest. Accordingly, this Court affirms the motion court's judgment.

## Factual and Procedural Background

In May 2014, officers assigned to the Southeast Missouri Drug Task Force responded to an anonymous tip regarding narcotics activity at a motel in Jackson, Missouri. Detective Bobby Sullivan, Detective Chris Newton, and other officers went to the second-floor balcony, where Mr. Greene stood with his friend, Matthew Robinson. Detective Newton talked with Mr. Greene, who was smoking a cigarette. Mr. Greene initially gave Detective Newton a false name, but Detective Sullivan personally knew him and addressed him by his real name. When Detective Sullivan asked if Mr. Greene "[had] anything on [him]," Mr. Greene responded, "Yes, I've got marijuana" and motioned down to his left front pocket.

The other officers noticed Mr. Robinson had a gun, so they handcuffed both men and moved them to the ground. Detective Sullivan then asked if he could remove the items in Mr. Greene's pocket, and Mr. Greene consented. Detective Sullivan removed several items from Mr. Greene's pocket, including a small bud of marijuana and a pack of Kool brand cigarettes.

Soon after the items were seized from Mr. Greene, the officers heard the door of a nearby motel room ("Room 1") slam shut. Detective Newton then heard shuffling inside. Upon knocking on the door and entering Room 1, officers found two men and two women they suspected of engaging in narcotics activity, carrying firearms, and destroying

2

evidence. Task Force Officer Mike Alford arrived several minutes later and helped to secure the individuals in Room 1.

The officers placed the items seized from Mr. Greene's pocket inside Mr. Greene's hat and secured them, along with Mr. Robinson's firearm, on the dresser in an adjacent motel room ("Room 2"), guarded by two officers standing out front. The male suspects found in Room 1 were searched and detained in that same room, and the officers searched Room 1. Simultaneously, the two female suspects were taken to Room 2, where they were searched. Directly after their search, the two women were escorted out of Room 2.

Approximately 30 minutes after Detective Sullivan initially removed the cigarette pack from Mr. Greene's pocket, Officer Alford entered Room 2, opened the pack, and looked underneath the cellophane. There, he found a small plastic baggie containing an off-white substance "secured or taped to the top of the flip top on the inside." Detective Newton performed a field test, which indicated the substance was methamphetamine. This was later confirmed by a laboratory test.

Mr. Greene was charged, as a prior and persistent drug offender under sections 195.275, RSMo 2000, and 195.291.1, RSMo 2000, with the class C felony of possession of a controlled substance (methamphetamine), section 195.202, RSMo Supp. 2013. He pleaded not guilty and was tried by a jury. His defense counsel did not file a motion to suppress or object at trial to evidence of the methamphetamine found during the search of the cigarette pack. The jury returned a guilty verdict, and the circuit court sentenced him to 10 years in prison on the methamphetamine count.

Mr. Greene appealed the judgment, which was affirmed. *State v. Greene*, 476 S.W.3d 309 (Mo. App. 2015). He subsequently filed a Rule 29.15 motion, claiming his trial counsel was ineffective for failing to file a motion to suppress the methamphetamine found in his cigarette pack. The motion court overruled his postconviction motion without an evidentiary hearing, finding the search was legal because it was incident to a lawful arrest. Mr. Greene appealed the motion court's judgment. After opinion by the court of appeals, this Court ordered the cause transferred. Mo. Const. art. V, sec. 10.

On appeal, Mr. Greene contends the motion court clearly erred in overruling, without an evidentiary hearing, his claim that trial counsel was ineffective for failing to file a motion to suppress the methamphetamine found in the warrantless search of the cigarette pack seized from his pocket. He asserts a Fourth Amendment challenge to the search would have been meritorious because the cigarette pack was subsequently searched unlawfully when it was outside the area of his immediate control and reasonable trial counsel would have challenged the search.

## Standard of Review

"In reviewing the overruling of a motion for post-conviction relief, the motion court's ruling is presumed correct." *McLaughlin v. State*, 378 S.W.3d 328, 336-37 (Mo. banc 2012). This Court overturns a motion court's judgment only when its findings of fact or conclusions of law are "clearly erroneous." Rule 29.15(k). To be overturned, the ruling must create a "definite and firm impression that a mistake has been made." *Zink v. State*, 278 S.W.3d 170, 175 (Mo. banc 2009). Furthermore, a movant is entitled to an evidentiary hearing only if: "(1) [the movant] pleaded facts, not conclusions, warranting relief; (2) the

4

facts alleged are not refuted by the record; and (3) the matters complained of resulted in prejudice to [the movant]." *McLaughlin*, 378 S.W.3d at 337.

Review of claims of ineffective assistance of counsel are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Supreme Court recognized "the Sixth Amendment right to counsel exists, and is needed, in order to protect the fundamental right to a fair trial." *Id.* at 684. "[T]he right to counsel is the right to the effective assistance of counsel." *Id.* at 686 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). To prevail on a claim for ineffective assistance of counsel under *Strickland*, a criminal defendant must demonstrate both that counsel "failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances" and that the defendant "was thereby prejudiced." *Sanders v. State*, 738 S.W.2d 856, 857 (Mo. banc 1987).

Both *Strickland* prongs must be proven by a preponderance of the evidence. *McLaughlin*, 378 S.W.3d at 337. When defense counsel fails to raise a Fourth Amendment claim, the defendant must "prove that [the defendant's] Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).

**Fourth Amendment Claim Not Meritorious**

Determination of the merits of Mr. Greene's claim that the search of his cigarette pack was unlawful requires examination of Fourth Amendment jurisprudence. The Fourth Amendment protects the right to be free from "unreasonable searches and seizures." U.S.

5

Const. amend. IV. A warrantless search is "*per se* unreasonable . . . subject only to a few specifically established and well-delineated exceptions." *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). One exception to the warrant requirement is a search conducted incident to a lawful arrest. *Id.* Under this exception, an arresting officer may search: (1) "the person of the arrestee" and (2) "the area within the control of the arrestee." *United States v. Robinson*, 414 U.S. 218, 224 (1973). The search incident to arrest exception allows officers "to remove any weapons that the [arrestee] might seek to use in order to resist arrest or effect his escape" and to "seize any evidence on the arrestee's person in order to prevent its concealment or destruction." *Riley v. California*, 573 U.S. 373, 383 (2014) (quoting *Chimel v. California*, 395 U.S. 752, 763 (1969)).

In cases with facts similar to this case, the Supreme Court has addressed the legality of the search of a cigarette pack when the cigarette pack was seized during a search of the arrestee's person. In *Robinson*, a police officer lawfully arrested Mr. Robinson and conducted a search of his person. 414 U.S. at 220-23. The officer found a cigarette pack in Mr. Robinson's coat pocket and opened it to find 14 gelatin capsules filled with heroin. *Id.* at 223.

In holding the warrantless search of the cigarette pack in Mr. Robinson's pocket did not violate the Fourth Amendment, the Supreme Court explained the authority to search a person incident to arrest does not hinge on what a court later decides was the probability weapons or evidence would be uncovered. *Id.* at 235-36. Instead, "[i]t is the fact of the lawful arrest which establishes the authority to search." *Id.* at 235. The Supreme Court

6

held, "Having in the course of a lawful search come upon the crumpled package of cigarettes, [the police officer] was entitled to inspect it; and when his inspection revealed the heroin capsules, he was entitled to seize them as 'fruits, instrumentalities, or contraband' probative of criminal conduct." *Id.* at 236.

The Supreme Court decided *Gustafson v. Florida*, 414 U.S. 260 (1973), the same day as *Robinson*. In *Gustafson*, a police officer lawfully arrested Mr. Gustafson and conducted a search of his person. *Id.* at 262. The officer discovered a cigarette box in Mr. Gustafson's pocket. *Id.* After first securing Mr. Gustafson in the back of the squad car, the officer opened the cigarette box and observed rolled cigarettes later proven to be marijuana. *Id.* at 262 n.2. Though the search occurred after the initial search of Mr. Gustafson's person and outside the area of his immediate control, the Supreme Court found the warrantless search of the cigarette box was lawful because "[i]t is the fact of the lawful arrest which establishes the authority to search . . . ." *Id.* at 263-64 (alterations in original).

The Supreme Court did not distinguish between a search of the arrestees' persons and searches of their cigarette packs in *Robinson* or *Gustafson*. Rather, when referencing *Robinson*, the Supreme Court "merely noted that, '[h]aving in the course of a lawful search come upon the crumpled package of cigarettes, [the officer] was entitled to inspect it.'" *Riley*, 573 U.S. at 384 (alterations in original) (quoting *Robinson*, 414 U.S. at 236)). The Supreme Court later clarified that the exception permitting warrantless searches of an arrestee's personal effects was confined to "personal property . . . immediately associated with the person of the arrestee." *United States v. Chadwick*, 433 U.S. 1, 15 (1977),

7

*abrogated on other grounds by California v. Acevedo*, 500 U.S. 565 (1991).[1] A search of the personal property immediately associated with the arrestee's person incident to a lawful arrest requires no additional justification beyond the lawful arrest. *Robinson*, 414 U.S. at 235. But warrantless searches of "personal property not immediately associated with the person of the arrestee" that is seized at the time of an arrest "cannot be justified as incident to that arrest either if the 'search is remote in time or place from the arrest,' or no exigency exists." *Chadwick*, 433 U.S. at 15 (citation omitted) (quoting *Preston v. United States*, 376 U.S. 364, 367 (1964)).

Following the analyses of these cases, the search of Mr. Greene's person and the seizure of the cigarette pack from his pocket were lawful. After Detective Sullivan asked Mr. Greene whether he had anything on his person, Mr. Greene admitted he had marijuana on his person. Mr. Greene concedes there was probable cause to arrest him after he stated he had marijuana – an illegal substance. Consequent to this lawful arrest, Detective Sullivan was justified in searching Mr. Greene's person and seizing items likely to contain contraband to prevent their concealment or destruction.

While Mr. Greene does not challenge that the initial search of his person and seizure of the cigarette pack were lawful, he claims the fact the search of the cigarette pack did not

---

[1] Many Fourth Amendment decisions have involved determining whether items of personal property carried by an arrestee may be searched. *See, e.g., United States v. Matthews*, 532 F. App'x 211, 217-18 (3d Cir. 2013); *United States v. Carrion*, 809 F.2d 1120, 1128-29 (5th Cir. 1987); *United States v. Watson*, 669 F.2d 1374, 1383-84 (11th Cir. 1982); *United States v. Monclavo-Cruz*, 662 F.2d 1285, 1287-89 (9th Cir. 1981); *United States v. Berry*, 571 F.2d 2, 3 (7th Cir. 1978); *United States v. Lee*, 501 F.2d 890, 892 (D.C. Cir. 1974); *see also State v. Carrawell*, 481 S.W.3d 833, 849 (Mo. banc 2016) (Wilson, J., concurring) (collecting cases).

occur until after the pack was out of the area of his immediate control makes the search unlawful. In support of this claim, Mr. Greene references evidence that, after securing him and removing the cigarette pack, the officers placed the pack in a separate room and did not return to search the pack until 30 minutes later.

Contrary to Mr. Greene's claim, items seized during the search of the person of the arrestee may be legally searched and need not be searched contemporaneously with the arrest. In *United States v. Edwards*, 415 U.S. 800, 802 (1974), the United States Supreme Court rejected the defendant's challenge to a ten-hour delay in the seizure of clothing worn by a defendant at the time of arrest and its subsequent laboratory analysis. The Supreme Court stated "searches and seizures that could be made on the spot at the time of arrest *may legally be conducted later* when the accused arrives at the place of detention." *Id.* at 803 (emphasis added). In so holding, the Supreme Court noted with approval long-standing precedent:

> [O]nce the accused is lawfully arrested and is in custody, the effects in his possession at the place of detention that were subject to search at the time and place of his arrest may lawfully be searched and seized without a warrant even though a substantial period of time has elapsed between the arrest and subsequent administrative processing, on the one hand, and the taking of the property for use as evidence, on the other.

*Id.* at 807. The Supreme Court emphasized that the items on the defendant's person were subject to seizure and search incident to arrest in concluding:

> While the legal arrest of a person should not destroy the privacy of his premises, it does – for at least a reasonable time and to a reasonable extent – take his own privacy out of the realm of protection from police interest in weapons, means of escape, and evidence.

*Id.* at 808-09 (quoting *United States v. DeLeo*, 422 F.2d 487, 493 (1st Cir. 1970)).

9

Mr. Greene argues, however, that the Supreme Court's holding in *Gant*, 556 U.S. 332, on which this Court relied to find a search unlawful in *Carrawell*, 481 S.W.3d 833, compels the holding that the officer's search of the cigarette pack was unlawful because the cigarette pack was outside the area of his immediate control when searched.[2] *Gant* and *Carrawell* do not aid Mr. Greene. Neither case involved a search of the person of the arrestee or of an item immediately associated with the arrestee's person. In *Gant,* the issue was the scope of a search incident to arrest in the context of a vehicle search. 556 U.S. at 342-43. In *Carrawell,* this Court addressed the legality of the search of a plastic bag held by the arrestee during the arrest. 481 S.W.3d at 837. The bag was seized after it had dropped to the ground. *Id.* at 836.

While much of the discussion in *Carrawell* on which Mr. Greene relies is dicta, *Carrawell* does question the viability of the holdings of *Robinson* and *Edwards*. Contrary to that questioning, the decision of the Supreme Court in *Riley* compels the conclusion that the holdings of those cases remain good law and govern the search of items found during a search of the arrestee's person.

---

[2] While relying on the holding in *Carrawell* that the search of an item outside an arrestee's immediate control was unlawful, Mr. Greene challenges the further holding in *Carrawell* that evidence from the unlawful search should not be excluded because it was objectively reasonable for the officers to rely on binding precedent of the court of appeals that the search was a valid search incident to arrest, even though that precedent was later overturned. *See, e.g., State v. Ellis*, 355 S.W.3d 522 (Mo. App. 2011), *abrogated by Carrawell*, 481 S.W.3d at 839. Mr. Greene asserts it was objectively unreasonable for officers in 2014 to follow the overly broad interpretation of the search incident to arrest exception from prior appellate cases because *Gant* had already deemed such an interpretation erroneous in 2009.

The issue in *Riley* was whether law enforcement's warrantless searches for information on cell phones found and seized in a search of the arrestee's person were lawful. 573 U.S. at 378. The Supreme Court affirmed the holdings of its prior cases establishing the scope of the search incident to arrest exception to the warrant requirement. *Id.* at 382-84. *Riley* noted that, beginning in *Chimel*:

> The Court crafted the following rule for the reasonableness of a search incident to arrest: "When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction . . . . There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control' – construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence."

*Id.* at 383 (alterations in original) (quoting *Chimel,* 395 U.S. at 762-63). The Supreme Court held the search of Mr. Chimel's entire home, including the contents of drawers, at the time of his arrest was unlawful because there was no need to protect officer safety or to preserve evidence. *Chimel*, 395 U.S. at 763, 768.

> Next, in discussing *Robinson*, the Supreme Court expressly stated:

> [T]he Court did not draw a line between a search of Robinson's person and a further examination of the cigarette pack found during that search. It merely noted that, "[h]aving in the course of a lawful search come upon the crumpled package of cigarettes, [the officer] was entitled to inspect it."

*Riley*, 573 U.S. at 384 (second and third alterations in original) (quoting *Robinson*, 414 U.S. at 236). Instead, the custodial arrest qualifies as a reasonable intrusion under the

Fourth Amendment and "a search incident to the arrest requires no additional justification." *Id.*

*Riley* then discussed the third case in the "search incident to arrest trilogy," *Gant*, stating it "analyzed searches of an arrestee's vehicle." *Id.* at 384. It found *Gant* "recognized that the *Chimel* concerns for officer safety and evidence preservation [that] underlie the search incident to arrest exception" authorize searches of an arrestee's vehicle and the seizure of weapons or evidence "only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." *Id.* at 384-85 (quoting *Gant*, 556 U.S. at 343). It also found *Gant* relied on "circumstances unique to the vehicle context," rather than *Chimel,* to add an additional "independent exception" for a warrantless search of a vehicle's passenger compartment "when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" *Id.* at 385 (quoting *Gant*, 556 U.S. at 343).

The Supreme Court's discussion in *Riley* of *Chimel, Robinson,* and *Gant* affirms the holdings of those cases. Of significance to this case, the articulation of the principles established in *Robinson* and *Gant* shows the Supreme Court continues to distinguish the search of an arrestee's person and items immediately associated therewith, which was the focus of *Robinson*, from the search of the area within the arrestee's control, which was the focus of *Gant*.

This conclusion is further confirmed by *Riley*'s reliance on the analysis and holding of *Robinson* to determine whether the warrantless searches of Mr. Riley's and Mr. Wurie's cell phones were lawful. In analyzing these searches, *Riley* expressly affirmed the rule in

12

*Robinson* as governing the search and seizure of physical property found incident to the search of an arrestee's person. It found, "*Robinson*'s categorical rule strikes the appropriate balance in the context of physical objects." *Id.* at 386. It noted *Robinson* found the "two risks identified in *Chimel* – harm to officers and destruction of evidence – are present in all custodial arrests" and outweigh "any privacy interests retained by an individual after arrest[, which are] significantly diminished by the fact of the arrest itself." *Id.* It held, under *Robinson*, "[l]aw enforcement officers remain free to examine the physical aspects of a phone to ensure that it will not be used as a weapon." *Id.* at 387. Nevertheless, it found the nature of the data found on cell phones implicated greater privacy concerns, and a warrantless search of such data was not "reasonable" under the Fourth Amendment. *Id.* at 386.

The Supreme Court's express statements in *Riley* affirm the holding of *Robinson*, and its legal analysis affirms the holdings of *Gustafson* and *Edwards*. "We do not overlook *Robinson*'s admonition that searches of a person incident to arrest, 'while based upon the need to disarm and to discover evidence,' are reasonable regardless of 'the probability in a particular arrest situation that weapons or evidence would in fact be found.'" *Id.* (quoting *Robinson*, 414 U.S. at 235).[3] Together, the holdings in *Robinson*, *Gustafson*, and *Edwards* establish the fact of a lawful arrest is sufficient to justify a reasonably delayed search of

---

[3] The Supreme Court also recently reaffirmed, in *Birchfield v. North Dakota*, 136 S. Ct. 2160, 2175-76 (2016), *Robinson*'s rule that it is the fact of a lawful arrest that justifies a search of the person.

13

items found on a defendant's person at the time of arrest. Any contrary statements in *Carrawell* should no longer to be followed.

Because the cigarette pack discovered during a search of Mr. Greene's person qualifies as an item immediately associated with his person, it was irrelevant that Officer Alford searched the pack in a separate room 30 minutes after Mr. Greene was arrested. The warrantless search of the cigarette pack was justified by the fact of Mr. Greene's lawful arrest. Mr. Greene's Fourth Amendment claim lacked merit; therefore, his counsel was not ineffective in failing to challenge the search of the cigarette pack. Accordingly, the motion court did not clearly err in denying Mr. Greene an evidentiary hearing on this claim and overruling his postconviction motion.

### Conclusion

Because the search of Mr. Greene's cigarette pack was a lawful search incident to arrest, he failed to plead facts showing his counsel was ineffective in not challenging the search. The motion court did not clearly err in overruling his postconviction motion without an evidentiary hearing. Accordingly, the judgment of the motion court is affirmed.

_____
PATRICIA BRECKENRIDGE, JUDGE

All concur.

14