

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Appellant, | ) | WD83251 |
| v. | ) | |
| | ) | |
| | ) | OPINION FILED: |
| | ) | May 5, 2020 |
| KYLE MATTHEW LEDBETTER, | ) | |
| | ) | |
| Respondent. | ) | |

**Appeal from the Circuit Court of Cole County, Missouri**
**The Honorable Jon E. Beetem, Judge**

**Before Division Two:** Mark D. Pfeiffer, Presiding Judge, and
Alok Ahuja and Gary D. Witt, Judges

The State of Missouri (the "State") brings this interlocutory appeal, challenging the trial court's grant of Mr. Kyle Ledbetter's ("Ledbetter") motion to suppress evidence seized in a warrantless search of his vehicle after he was arrested, including incriminating statements made by Ledbetter after he was made aware of the fruit of the unlawful search. Because the search of the *person* of the arrestee is different than a search of the arrestee's *vehicle* incident to such arrest, we agree with the trial court that there was no exception to the warrant requirement of the Fourth Amendment, and we affirm the trial court's suppression ruling.

**Factual and Procedural Background**

On January 18, 2018, Kohl's employees allegedly saw Ledbetter shoplifting a sweatshirt from the store. Ledbetter refused employee requests to stop and left the premises in a car. Police were notified, and thereafter Officer Wansing began investigating by conducting interviews of the employee witnesses at Kohl's. A police dispatch with a description of Ledbetter's vehicle and a description of Ledbetter was radioed to law enforcement in the area.

Shortly thereafter, Officer Bowman came upon a vehicle matching the police dispatch description while patrolling the nearby area. Officer Bowman initiated a stop of the vehicle and encountered Ledbetter. He instructed Ledbetter to show his hands and exit the vehicle, and Ledbetter was cooperative and voluntarily complied. Once Ledbetter had exited the vehicle and without questioning Ledbetter or explaining the purpose of stopping Ledbetter, Officer Bowman patted Ledbetter down to check for weapons and, while Ledbetter was a safe distance from the vehicle, Officer Bowman then proceeded to search the glove box, center console, and underneath the seats of Ledbetter's vehicle to check for weapons. While doing so, he observed a McDonald's sack in the driver's seat, which was open and visibly contained a cheeseburger, fries, and a small, zipped first aid kit.

By this time, another officer arrived on the scene and placed Ledbetter in handcuffs, though at no time was Ledbetter ever told why he was being placed under arrest, or for that matter, *if* he was being arrested for suspicion of committing a crime. Once Ledbetter was in handcuffs and secured in the custody of this officer in the back of the officer's patrol car, Officer Bowman proceeded to conduct a warrantless search of the McDonald's sack and the first aid kit contained therein without Ledbetter's consent. Officer Bowman's search of the first aid kit, which was small and incapable of containing a sweatshirt inside it, produced the discovery of a clear plastic, circular

container with white crystalline substance that Officer Bowman recognized from observation and training to be methamphetamine. In the first aid kit, Officer Bowman also found a sock, which contained pipes used to smoke methamphetamine.

After observing Officer Bowman search the contents of the first aid kit, Ledbetter made incriminating statements that he knew drugs and drug paraphernalia were inside the kit.

Ledbetter was later charged with possession of a controlled substance. Ledbetter filed a motion to suppress evidence from Officer Bowman's warrantless search of the first aid kit and all evidence discovered as a product of the warrantless search. Following a hearing, the trial court sustained the motion. The motion court found that Officer Bowman had reasonable suspicion to stop and briefly detain Ledbetter to investigate the possible shoplifting crime but no probable cause to search the first aid kit, which was neither on Ledbetter's person when he was arrested nor of a size that was relevant to a search for the item alleged to have been shoplifted—a sweatshirt. As such, the trial court concluded that the evidence of the contents of the zipped first aid kit was obtained in violation of Ledbetter's Fourth Amendment due process rights and that all evidence acquired from the unlawful search, including Ledbetter's statements made in response to the seizure of the zipped first aid kit, were to be excluded as "fruit of the poisonous tree." The State timely filed this interlocutory appeal.[1]

## Standard of Review

We review the trial court's granting of a motion to suppress for clear error only. *State v. Lammers*, 479 S.W.3d 624, 630 (Mo. banc 2016). As such, reversal is only warranted if, "after review of the entire record, this Court is left with the definite and firm impression that a mistake

---

[1] *See* section 547.200.1(3) RSMo 2016; *State v. Burns*, 339 S.W.3d 570, 571-72 (Mo. App. W.D. 2011) (observing that the State is entitled to interlocutory appeal of a trial court's suppression ruling suppressing evidence in a criminal case).

has been made." *Id.* The appellate court defers to the factual findings and credibility determinations made by the trial court and views the evidence and all reasonable inferences therefrom in the light most favorable to the ruling of the trial court. *Id.* Whether conduct violates the Fourth Amendment of the United States Constitution is a question of law we review *de novo*. *Id.*

## Analysis

The Fourth Amendment of the United States Constitution protects individuals' right to be free from "unreasonable searches and seizures." U.S. CONST. amend. IV. "Enforced pursuant to the exclusionary rule, the protections of the Fourth Amendment have been extended via the Fourteenth Amendment to defendants in state court prosecutions." *State v. Goucher*, 580 S.W.3d 625, 633 (Mo. App. W.D. 2019) (internal quotation marks omitted). "A warrantless search is '*per se* unreasonable . . . subject only to a few specifically established and well-delineated exceptions.'" *Greene v. State*, 585 S.W.3d 800, 804 (Mo. banc 2019) (quoting *Arizona v. Gant*, 556 U.S. 332, 338, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009); *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)). "The burden falls on the State to justify [the] warrantless search or seizure." *State v. Stoebe*, 406 S.W.3d 509, 514 (Mo. App. W.D. 2013).

> In determining whether the seizure and search were unreasonable, the court must determine whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place. Constitutionally sound probable cause is not dependent upon the subjective intentions of the officer. Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis.

*Goucher*, 580 S.W.3d at 633-34 (internal quotation marks omitted).

Exceptions relating to the requirement of a warrant to search the contents of Ledbetter's vehicle vary depending upon whether Officer Bowman's search was part of an investigative detention (*Terry* stop) or whether the encounter was an arrest. *See State v. Pfleiderer*, 8 S.W.3d

4

249, 254 (Mo. App. W.D. 1999) (noting that different degrees of Fourth Amendment protection are afforded for different categories of contact police can have with civilians). Under the factual circumstances of this case, Officer Bowman's warrantless search of the first aid kit was unlawful.

***Terry*-stop investigative detention:**

The exception of a reasonable warrantless search as part of an investigative detention was explained in *Terry v. Ohio*:

> where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him.

392 U.S. 1, 30, 88 S.Ct. 1868, 1884-85, 20 L.Ed.2d 889 (1968).

Here, Ledbetter was suspected of shoplifting when approached by Officer Bowman and the officer's initial detention was lawful. *Pfleiderer*, 8 S.W.3d at 254 ("[P]olice officers may stop or detain an individual if they have a reasonable suspicion based on specific and articulable facts from the totality of the circumstances that the person is or was involved in criminal activity."). And, though Officer Bowman's police dispatch had not suggested that the suspect was armed and dangerous, upon stopping Ledbetter's vehicle, the officer observed Ledbetter's head go down beneath the seat and, accordingly, it was not unreasonable for Officer Bowman, upon approaching Ledbetter's vehicle, to request that Ledbetter show the officer his hands, exit the vehicle, and "to conduct a carefully limited search of the outer clothing of [Ledbetter] in an attempt to discover weapons which might be used to assault him." *Terry*, 392 U.S. at 30.

However, once another officer arrived at the scene, placed Ledbetter in handcuffs, and physically restrained Ledbetter in the back of the patrol car—all while never advising a cooperative Ledbetter *why* he was being physically restrained—the *Terry* stop was elevated to an arrest by this point in time. It is on this basis, the State claims, that Officer Bowman was entitled to search the contents of the vehicle that included a McDonald's sack with a burger, fries, and a small first aid kit inside the sack.

**Search incident to arrest:**

There is no bright line test to distinguish between an investigative stop and an arrest. *State v. Taber*, 73 S.W.3d 699, 705 (Mo. App. W.D. 2002). In spite of the lack of clarity regarding when an encounter has exceeded the bounds of an investigative stop and become an arrest, "courts are to 'consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter.'" *State v. Dixon*, 218 S.W.3d 14, 20 (Mo. App. W.D. 2007) (quoting *State v. Stacy*, 121 S.W.3d 328, 332 (Mo. App. W.D. 2003)). Factors for consideration include, but are not limited to, "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Id.* (internal quotation marks omitted).

Here, after Ledbetter's car was stopped and he was physically restrained via handcuffs and placed in the patrol car, there simply is no reasonable dispute that he was arrested at that time. But, the facts of this case interpreted in a light most favorable to the trial court's ruling do *not* support the suggestion by the State that Ledbetter was *immediately* arrested upon being stopped and that somehow the McDonald's sack of a burger, fries, and a small first aid kit was part of

6

Ledbetter's "person" that was searched incident to his arrest. The State's reliance upon *Greene* is misplaced.

The exception for a search incident to a lawful arrest "derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations." *Gant*, 556 U.S. at 338, 129 S.Ct. at 1716. "Under this exception, an arresting officer may search: (1) 'the person of the arrestee' and (2) 'the area within the control of the arrestee.'" *Greene*, 585 S.W.3d at 804 (quoting *United States v. Robinson*, 414 U.S. 218, 224, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973)).

In *Greene*, which did *not* involve the search of a vehicle that the arrestee had recently occupied, the suspect who was arrested told police that he possessed marijuana in his left front pant pocket, and when law enforcement searched his person, removed a pack of cigarettes from this pant pocket. *Id.* at 802. Even though law enforcement did not ultimately search the pack of cigarettes until approximately thirty minutes later when the defendant was in custody and no longer anywhere within the control of the cigarettes, the *Greene* court concluded that the subsequent warrantless search was lawful since "items seized during the search of the person of the arrestee may be legally searched and need not be searched contemporaneously with the arrest." *Id.* at 805.

Here, Ledbetter was stopped, he was cooperative and complied with all directives of Officer Bowman, he did not resist the officer's pat-down to check him for weapons, and he did not resist the officer's subsequent check for weapons inside his vehicle. Officer Bowman testified that he was "still investigating the shoplifting incident" when he asked Ledbetter to exit his vehicle, and that he asked Ledbetter to exit the vehicle "to check for weapons" and *not* to arrest Ledbetter at that time.

While we question what acts after Officer Bowman's *Terry* stop were ever designed to investigate shoplifting of a sweatshirt from Kohl's, Ledbetter was not placed under arrest until he

was physically detained by Officer Bowman and the subsequent officer who arrived at the scene. Even if the pat-down of Ledbetter immediately prior to being handcuffed constituted a search of Ledbetter's person incident to arrest, such search did not result in the seizure of the McDonald's sack with the burger, fries, and small first aid kit on Ledbetter's person. Instead, the McDonald's sack was *in the vehicle* and the only reason Officer Bowman knew of the McDonald's sack was because he saw it after he first conducted a *Terry* search for weapons in the car after Ledbetter was nowhere near the car at the time of the weapons search. The McDonald's sack was *not* part of Ledbetter's person and was *not* the product of a search of Ledbetter's person incident to arrest— either contemporaneously or subsequently thereafter. *Greene* is thus, inapposite, and instead, the United States Supreme Court's automobile exception analysis from *Arizona v. Gant*, 556 U.S. 332, 338, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009), and its progeny are relevant to our ruling today.

Under the search incident to arrest exception, when the arrestee was recently occupying a vehicle:

> [p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest. When these justifications are absent, a search of an arrestee's vehicle will be unreasonable unless police obtain a warrant or show that another exception to the warrant requirement applies.

*Gant*, 556 U.S. at 351. *Gant* explained that under the second category of its vehicle exception: "If there is probable cause to believe a vehicle contains evidence of criminal activity, *United States v. Ross*, 456 U.S. 798, 820-21, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), authorizes a search of any area of the vehicle *in which the evidence might be found.*" 556 U.S. at 347 (emphasis added).

Recently, our Missouri Supreme Court analyzed *Gant* in the context of search incident to arrest where the arrestee had parked, exited from his vehicle, and dropped a plastic bag with various contents prior to being arrested. *State v. Carrawell*, 481 S.W.3d 833, 836 (Mo. banc 2016).

8

After handcuffing the suspect and placing him under arrest, the arresting officer saw the bag on the ground, picked it up, searched it after the suspect was locked in the patrol car, and discovered what the officer believed to be—and was later confirmed to be—heroin. *Id.* Our Missouri Supreme Court concluded that "the plastic bag in this case was easily separated from the arrestee's person" and since the plastic bag was not part of the arrestee's person at the time of the arrest and was "not within the arrestee's reaching distance (or 'immediate control') at the time of the search, the justifications for a search incident to arrest [were] absent and there [was] no valid search incident to arrest." *Id.* at 839, 840-41.

> [C]arrawell was handcuffed and locked in the back of a police car at the time [the arresting officer] searched the plastic bag. It matters not whether this bag was more akin to luggage or more akin to a purse. Neither is part of the person. It matters only whether the bag was within Carrawell's immediate control. Because it was not, there was not a valid search incident to arrest.

*Id.* at 845.[2]

Here, the McDonald's sack and contents therein were *not* on Ledbetter's person when he was arrested. And, like the arrestee in *Carrawell*, Ledbetter was handcuffed, locked in the back of a police car, and was not within reaching distance of the first aid kit at the time it was searched by Officer Bowman. Further, under the second *Gant* exception, Officer Bowman's search of the first aid kit was not reasonable, as it was not of an area of the vehicle "in which the evidence [of the offense for which Ledbetter was being investigated, alleged shoplifting of one or more sweatshirts,] might be found." *Gant*, 556 U.S. at 347; *Ross*, 456 U.S. at 820-21. Plainly, the subject search of the first aid kit was not a valid warrantless search incident to arrest.

---

[2] In *Greene v. State*, the Missouri Supreme Court held that "the fact of a lawful arrest is sufficient to justify a reasonably delayed search of items *found on a defendant's person at the time of arrest*," and specified that "[a]ny contrary statement in *Carrawell* should no longer . . . be followed." 585 S.W.3d 800, 808 (Mo. banc 2019) (emphasis added). The Supreme Court's limited overruling of *Carrawell* is not relevant in the present case, because the McDonald's bag was not "found on [Ledbetter's] person at the time of arrest." The language we quote from *Carrawell* remains binding precedent despite the subsequent *Greene* decision.

The State's point on appeal is denied.

**Conclusion**

Because Officer Bowman's search of Ledbetter's vehicle and first aid kit was performed without a warrant and did not fall under any of the "'specifically established and well-delineated exceptions[,]'" it was unreasonable. *Greene*, 585 S.W.3d at 804 (quoting *Gant*, 556 U.S. at 338; *Katz*, 389 U.S. at 357). Because the search was unreasonable under the Fourth Amendment, the trial court's grant of Ledbetter's motion to suppress was not clearly erroneous. *Goucher*, 580 S.W.3d at 635. The judgment is affirmed.

/s/ *Mark D. Pfeiffer*

Mark D. Pfeiffer, Presiding Judge

Alok Ahuja and Gary D. Witt, Judges, concur.