LAURA DENVIR STITH, JUDGE
Edward Hughes appeals the circuit court's decision overruling his motion to suppress drugs and drug paraphernalia found during a warrantless search and seizure of his bag, which police seized from the back seat of the vehicle in which he had been riding. Mr. Hughes argues the circuit court erred in holding these items were within his possession or control when the facts showed he was handcuffed outside the open back seat door and in the custody of two officers when the bag was seized. He argues under Arizona v. Gant, 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009) , and State v. Carrawell , 481 S.W.3d 833 (Mo. banc 2016) , the drugs and drug paraphernalia should have been suppressed.
This Court affirms. While Mr. Hughes has standing to challenge the seizure of the bag he admitted belonged to him, this Court need not reach the issue whether Gant or Carrawell required the motion to suppress to be sustained because no prejudice resulted from it being overruled in this court-tried case. Sufficient additional evidence to support the conviction was introduced by the defense in its cross-examination of one of the arresting officers and through the defense's stipulation to the admission of the laboratory report showing the seized items were heroin and cocaine.
I. FACTUAL AND PROCEDURAL BACKGROUND
On the evening of September 9, 2015, officers traveling on Salisbury Road toward Natural Bridge Road in St. Louis City saw a black Chevy Impala approximately four car lengths ahead run a red light while traveling southbound. The officers activated their emergency lights and sirens. The vehicle continued for a short distance before making a U-turn and pulling over.
Mr. Hughes was a passenger in the back seat of the vehicle. The officers approached and obtained identifying information about him, the driver, and the other passenger. They found no basis for holding or arresting the driver or other passenger beyond issuing traffic citations, and the two ultimately left with the vehicle. But the officers discovered an arrest warrant for Mr. Hughes and asked him to step outside the vehicle. Once he did so, they placed him under arrest and in handcuffs.
Officer Murphy searched Mr. Hughes and found a suspicious substance in his pocket. Officer Murphy also saw a drawstring bag on the back seat directly next to where Mr. Hughes had been sitting and asked Mr. Hughes if the bag was his. When Mr. Hughes said it was, Officer Jeffries reached into the vehicle, seized the bag, and searched its contents. Officer Murphy testified that, at the time of the search, Officer Jeffries was standing next to Mr. Hughes, who was standing between Officer Murphy and the vehicle while in handcuffs. Officer Murphy could not estimate *122 how far from the bag or from the car Mr. Hughes was standing. Inside the bag, Officer Jeffries found what appeared to be - and later was confirmed to be - drugs and drug paraphernalia.
Mr. Hughes was taken into custody and charged with two counts of possession of a controlled substance and one count of possession of unlawful drug paraphernalia. In the probable cause statement, Officer Murphy referred to the searches of both the bag and Mr. Hughes' pocket as "searches incident to arrest."
Mr. Hughes did not challenge the search of his pocket, but he moved to suppress the evidence found inside the bag. He argued it was not found pursuant to a lawful search incident to arrest because it was not found on his person or within his immediate control as required by Gant and Carrawell.[1] The circuit court did not rule on the motion to suppress before it held a bench trial, informing counsel at the outset of the trial it would take up the motion to suppress evidence at the end of the proceeding. The record does not reflect either Mr. Hughes or the prosecutor objecting to this order of proceedings.
Defense counsel gave a brief opening statement in which she stated, "I believe the evidence at trial today will demonstrate that the evidence constituting the basis of charges I and III in this matter should be suppressed because they were not found pursuant to a lawful search." The remainder of the bench trial consisted of the direct and cross-examination of Officer Murphy, stipulated admission of laboratory reports showing the materials found in Mr. Hughes' pocket and bag were heroin and cocaine, and a brief argument about the merits of the motion to suppress in lieu of closing argument.
The prosecution questioned Officer Murphy about his search of Mr. Hughes' pocket and of the bag and moved to admit this evidence as State's exhibits 1 and 2. Defense counsel said she had no objection to introduction of either exhibit:
PROSECUTOR: Okay. Do those items, those bags and those items appear - are those the same items that were removed from the defendant on September 9, 2015?
OFFICER MURPHY: Yes.
PROSECUTOR: And the same items that you took - packaged and took to the lab?
OFFICER MURPHY: Yes.
PROSECUTOR: Okay. Your Honor, I would move to admit State's Exhibit 1 into evidence.
THE COURT: Any objection, Counsel?
DEFENSE COUNSEL: No, Your Honor.
....
PROSECUTOR: Okay. Can I have you remove the contents of that item? And what is that?
OFFICER MURPHY: This is the electronic grinder and the digital scale, which were removed from the defendant's black nylon bag.
PROSECUTOR: Okay. And is the bag or the contents of the bag appear to have been altered in any way?
OFFICER MURPHY: No.
*123 PROSECUTOR: And is the - are those the items that you seized from the defendant or his person on September 9, 2015?
OFFICER MURPHY: Yes.
PROSECUTOR: Your Honor, I would ask to move State's Exhibit 2 into evidence.
THE COURT: Any objection, Counsel?
DEFENSE COUNSEL: No, Your Honor.
Defense counsel then cross-examined Officer Murphy. After asking about the procedure used to search Mr. Hughes and seize the drugs, where Mr. Hughes was standing, and how he was secured, defense counsel specifically asked the officer whether he had found drugs and drug paraphernalia in the bag seized from Mr. Hughes:
DEFENSE COUNSEL: Okay. And your partner's the one who searched the bag?
OFFICER MURPHY: Correct.
DEFENSE COUNSEL: He did that in your presence?
OFFICER MURPHY: Correct.
DEFENSE COUNSEL: And this was while Mr. Hughes was in cuffs?
OFFICER MURPHY: Yes.
DEFENSE COUNSEL: Your officer - your partner found the suspected narcotics in the bag?
OFFICER MURPHY: Correct.
DEFENSE COUNSEL: And suspected paraphernalia?
OFFICER MURPHY: Correct.
(Emphasis added). Following the testimony of Officer Murphy, the prosecutor moved to admit the laboratory report, which concluded the items found in Mr. Hughes' bag and in his pocket were cocaine and heroin. The prosecutor informed the court both parties agreed to stipulate to the laboratory report, to which Mr. Hughes' counsel replied again, "I have no objection." The court admitted the laboratory report into evidence.
After both parties rested, defense counsel briefly argued in support of Mr. Hughes' motion to suppress there was no possible way for Mr. Hughes to access the bag at the time of the search because it was out of reaching distance and because he was in handcuffs and being guarded and, therefore, the bag should have been suppressed under Gant and Carrawell . The prosecutor contended the circuit court should determine the bag was subject to a search incident to arrest because it was within the reach of Mr. Hughes and so "immediately associated with him," although the prosecutor did not dispute Mr. Hughes was in handcuffs at the time.
The circuit court overruled the motion to suppress, explaining "after the defendant, Mr. Hughes, indicated that the bag belonged to him, the - certainly the officers had a right to take the bag in light of the proximity of the bag to the defendant, as well as the fact that it happened immediately." The circuit court found, beyond a reasonable doubt, Mr. Hughes was guilty of all crimes charged. It sentenced him to two seven-year prison terms for possession of a controlled substance and a 30-day term for possession of drug paraphernalia. After opinion by the court of appeals, this Court granted transfer. Mo. Const. art. V., sec. 10.
II. STANDARD OF REVIEW
This Court's review of the circuit court's ruling is a two-part inquiry. "The Court defers to the trial court's determination of credibility and factual findings, inquiring only whether the decision is supported by substantial evidence, and it will be reversed only if clearly erroneous." Carrawell, 481 S.W.3d at 837 (citations *124 omitted). "Determinations of reasonable suspicion and probable cause are reviewed de novo on appeal." State v. Grayson, 336 S.W.3d 138, 142 (Mo. banc 2011). The evidence presented before the ruling on the motion to suppress and at trial were one and the same; this Court considers all of this evidence to determine whether sufficient evidence exists in the record to support the circuit court's ruling. State v. Pike, 162 S.W.3d 464, 472 (Mo. banc 2005) ; State v. Deck, 994 S.W.2d 527, 534 (Mo. banc 1999).
III. ANY ERROR IN DENYING THE MOTION TO SUPPRESS WAS NOT PREJUDICIAL
Mr. Hughes argues at the time of his arrest Gant prohibited the type of warrantless search incident to arrest performed in this case as it held a search and seizure of items in a car incident to arrest was improper when there was no reasonable belief the defendant could have accessed the car at the time of the search. 556 U.S. at 344 , 129 S.Ct. 1710. As Mr. Hughes notes, this Court applied this prohibition in Carrawell, 481 S.W.3d at 845-46 , in which this Court relied on Gant to find a search of a bag incident to arrest unlawful when the defendant had dropped the bag so it was not in his immediate control.
A. Defense Counsel's Statement of "No Objection" on These Specific Facts Was Not a Waiver of the Motion to Suppress
While Mr. Hughes' counsel did file a motion to suppress the drugs and drug paraphernalia seized from his bag prior to trial, the circuit court did not rule on the motion prior to trial. Instead, the court stated it would rule on the motion after the trial was completed. This delay in considering the motion largely negates the purpose of its filing, which "is to avoid delays during trial in determining this issue" and "so the basis of the claim of unlawful search or seizure will be known, giving the state a fair chance to respond and the trial court a fair opportunity to rule on the claim." State v. Galazin, 58 S.W.3d 500, 505 (Mo. banc 2001) (citations omitted); State v. Harrington, 435 S.W.2d 318, 320 (Mo. 1968) ("The validity of a search and the admissibility in evidence of the fruits of that search present issues collateral to the issue of guilt which are to be tried independently").
Here, however, neither party objected to the circuit court's decision not to consider the motion prior to trial. Instead, they agreed to, and did, argue the motion as part of their closing arguments at the trial. Any error in failing to rule on the motion or take it under advisement prior to trial, therefore, is not preserved.
In any event, it long has been the law in Missouri that filing a pretrial motion objecting to the admission of evidence is not sufficient to preserve for appeal any error in failing to exclude it. See State v. Simone, 416 S.W.2d 96, 100 (Mo. 1967). "When a motion to suppress evidence is denied, and the evidence is offered, the defendant must object at the trial to preserve his contentions for appellate review." State v. Brown, 438 S.W.3d 500, 508 (Mo. App. 2014), citing State v. Powers, 613 S.W.2d 955, 959 (Mo. App. 1981). This is because the trial judge "should be given an opportunity to reconsider his prior ruling against the backdrop of the evidence actually adduced at trial." State v. Fields, 636 S.W.2d 76, 79 (Mo. App. 1982), citing State v. Yowell, 513 S.W.2d 397, 403 (Mo. banc 1974). This also allows the defendant to control whether the objection is maintained or withdrawn. "It is entirely possible that after hearing the evidence on motion to suppress the defendant's attorney may become convinced that his motion was *125 without merit. The required objection will therefore serve to advise the court as to whether the defendant continues to consider the evidence inadmissible." Yowell, 513 S.W.2d at 403 .
Even when the defendant fails to object to the admission of evidence at trial, erroneous admission of evidence is normally reviewable for plain error under Rule 30.20, which states: "Whether briefed or not, plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." See, e.g., State v. Johnson, 207 S.W.3d 24, 34 (Mo. banc 2006).
On the other hand, if a defendant not only fails to object but also states "no objection" or stipulates to the admission of otherwise objectionable evidence, the defendant affirmatively waives any error in its admission, plain or otherwise. State v. Johnson, 284 S.W.3d 561, 582 (Mo. banc 2009) ; State v. Starr, 492 S.W.2d 795, 801 (Mo. banc 1973) .
As quoted earlier, counsel for Mr. Hughes affirmatively stated "no objection" when the prosecutor sought to introduce evidence of the drugs and drug paraphernalia seized from Mr. Hughes' bag. The invited-error rule normally would apply. But both the State and defendant nonetheless treat the question of the admissibility of the drugs as preserved. While the record and briefs do not offer any direct explanation as to why this issue is treated as preserved, prior case law appears to provide the answer.
In State v. Baker, 103 S.W.3d 711, 716-17 (Mo. banc 2003) , the parties similarly treated the admissibility of certain evidence as preserved even though defendant had stated "no objection" when the evidence was introduced at trial. Baker held this to be proper because the record affirmatively showed a "mutual understanding" between all parties and the court at trial that the defendant had a continuing objection. In light of this understanding, the statement of "no objection" was understood to mean the defendant had no other objections beyond the continuing one. This "mutual understanding" exception is an often-recognized and narrow carve-out to the affirmative-waiver rule. See, e.g., State v. Morgan, 406 S.W.3d 490, 492 (Mo. App. 2013) ; State v. O'Neal, 392 S.W.3d 556, 561-64 (Mo. App. 2013) ; State v. Hawkins, 137 S.W.3d 549, 555-56 (Mo. App. 2004).
While it does not appear counsel for Mr. Hughes affirmatively requested a continuing objection, State v. Martin, 79 S.W.3d 912, 915 (Mo. App. 2002) , applied this exception when, as in this case, the court had said it would take the motion to suppress up with the case and only overruled the motion after the presentation of the evidence at trial. Even though defense counsel had not formally asked for a continuing objection, Martin held, in light of the circuit court's decision not to rule on the motion to suppress until after evidence was admitted and in light of the parties and court then taking up the motion after trial, the court would infer a mutual understanding the "no objection" statement meant no objection other than those contained in the motion to suppress. Id.
Martin was cited approvingly by this Court in Baker, and this Court adopts its reasoning here. Because the circuit court decided not to rule on the motion to suppress until after trial, and because both parties and the circuit court treated the issue as preserved even when defense counsel stated "no objection" when the drugs were offered into evidence, this Court will infer a mutual understanding the "no objection" voiced by defense counsel meant no objection other than that *126 included in the motion to suppress, and the objections raised in the motion to suppress are preserved for appeal. Whether to infer such a mutual understanding will depend on the facts of a particular case. Any resulting uncertainty and confusion as to whether objections to evidence are preserved could and should be avoided by making an objection to the admission of the contested evidence during the bench trial or taking up the motion to suppress prior to trial.
B. Applicability of Gant and Carrawell and Lack of Prejudice
The State disputes the search of Mr. Hughes' bag was unconstitutional under either Gant or Carrawell . While the State does not concede the rule in Carrawell would apply to the facts here, it argues because this search took place before Carrawell was decided, the exclusionary rule could not apply as the officers would have been acting in reasonable reliance on pre- Carrawell Missouri precedent.[2] The defense responds Carrawell simply applied Gant , which was the law long before the search and seizure at issue here. No police officer could reasonably rely on pre- Carrawell state law allowing seizure inconsistent with Gant as the latter is a United States Supreme Court decision and therefore was and is controlling.
Resolution of this interesting legal question is not necessary to the determination of this case. On appeal Mr. Hughes argues only that the circuit court erred "in admitting physical evidence of drugs and drug paraphernalia at trial" and that, as a result, "all the physical evidence should have been suppressed."
Even were Mr. Hughes right that the circuit court erred in failing to suppress all physical evidence, however, any error was not prejudicial because other evidence, which Mr. Hughes does not allege was erroneously admitted, fully supports the judgment reached by the circuit court. After asking Officer Murphy about the factual circumstances relevant to whether the bag was in Mr. Hughes' control, defense counsel then asked directly about whether drugs were found in the bag:
DEFENSE COUNSEL: Your partner's the one who searched the bag?
OFFICER MURPHY: Correct.
DEFENSE COUNSEL: He did that in your presence?
OFFICER MURPHY: Correct.
DEFENSE COUNSEL: And this was while Mr. Hughes was in cuffs?
OFFICER MURPHY: Yes.
DEFENSE COUNSEL: Your officer--your partner found the suspected narcotics in the bag?
OFFICER MURPHY: Correct.
DEFENSE COUNSEL: And suspected paraphernalia?
OFFICER MURPHY: Correct.
*127 Defense counsel also stipulated to the admission of the laboratory report, and the report showed the testing of the items found in the bag and the drugs taken from Mr. Hughes' pocket were cocaine and heroin. As this evidence was sufficient to support the judgment, no prejudice could have resulted from overruling the motion to suppress the actual physical evidence seized.
The Court further notes there is nothing to suggest the inferred agreement to have a continuing objection to evidence introduced by the prosecutor about the evidence seized extended to evidence affirmatively introduced by defense counsel herself though her own questioning. Defendants waive any objections to evidence made a part of the record through their own questioning, even if counsel's actions in doing so were for a strategic reason. Matter of Brown v. State, 519 S.W.3d 848, 860 (Mo. App. 2017) ; In re Berg, 342 S.W.3d 374, 384 (Mo. App. 2011) ; State v. Collins, 587 S.W.2d 303, 306 (Mo. App. 1979).
IV. CONCLUSION
For the reasons stated above, the circuit court's judgment is affirmed.
Wilson, Russell, Powell and Breckenridge, JJ., concur; Fischer, C.J., concurs in result; Draper, J., dissents.

Mr. Hughes also argues in this Court that if the evidence seized from the bag is suppressed, then the drugs seized from his pocket must also be suppressed because the seized drugs were mixed together when bagged as evidence, making it impossible to differentiate which drugs came from the bag and which from his pocket. Therefore, Hughes contends, all of the drugs should be suppressed. Because this Court finds there was sufficient evidence to support a conviction for possession of the drugs found in Mr. Hughes' pocket and those found in the bag, it need not reach this issue.

The State first argues, in reliance on Rakas v. Illinois, 439 U.S. 128, 133-34, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978) , Mr. Hughes does not have Fourth Amendment standing to challenge the search of the automobile as he did not show he owned, leased, or rented the vehicle. But the State misunderstands Rakas , which held a defendant lacks Fourth Amendment standing if he or she does not have "a property nor a possessory interest in the automobile, nor an interest in the property seized." Id.
Mr. Hughes grounds his Fourth Amendment standing in his ownership of the bag searched and not an interest in the car. In State v. Lane , 937 S.W.2d 721, 722 (Mo. banc 1997) , this Court held Lane, a passenger in a car, had Fourth Amendment standing when he sought to suppress evidence discovered in his personal bag because he "retain[ed] an expectation of privacy in his personal luggage regardless of its location." Like in Lane , Mr. Hughes acknowledges he owns the bag in question, so he has standing to assert a Fourth Amendment violation.