

# Missouri Court of Appeals

## Southern District

### Division Two

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | No. SD36867 |
| | ) | |
| vs. | ) | **Filed: December 14, 2021** |
| | ) | |
| RICHARD ROMEL TAYLOR, | ) | |
| | ) | |
| Appellant. | ) | |

APPEAL FROM THE CIRCUIT COURT OF PULASKI COUNTY

Honorable Judge John D. Beger

**<u>AFFIRMED</u>**

Richard Romel Taylor ("Taylor") appeals his convictions of two counts of murder in the second degree, two counts of assault in the first degree, and four counts of armed criminal action following a bench trial.[1]  Taylor raises two points on appeal.  In his first point, Taylor argues the trial court erred in overruling his motion to suppress and admitting the evidence "found as a result of the unlawful GPS search of [his van], including historical location data ostensibly tying him to the shootings, and the statement of [] a passenger in the [van] when it was finally stopped[.]"  In his second point, he argues that the trial court erred in overruling his motion to suppress the identification made by David Reeves ("Reeves") and admitting Reeves'

---

[1] *See* §§ 565.021, 565.050, and 575.150.  All statutory citations are to RSMo. (2016) unless otherwise indicated.

in-court identification "because the identification was tainted by an impermissibly suggestive procedure[.]" Finding no merit in either point, we affirm.

## Factual and Procedural Background

We view the evidence presented and all reasonable inferences drawn therefrom in the light most favorable to the trial court's ruling and disregard all evidence and inferences to the contrary. *State v. Brown*, 332 S.W.3d 282, 284 (Mo. App. S.D. 2011).

Following a bench trial, Taylor was convicted of two counts of second-degree murder for the shooting deaths of Sherry Gann ("Sherry") and Jonathan Graham ("Graham"), two counts of first-degree assault for shooting Cassandra Gann ("Cassandra") and David Reeves ("Reeves"), and four counts of armed criminal action.[2]

The following evidence was adduced at trial. Around 2:45 p.m. on January 11, 2018 in Pulaski County, a passerby discovered four individuals on Houston Road who had been shot. The individuals were Cassandra, Sherry, Graham, and Reeves. Sherry and Graham died from their injuries, but Cassandra and Reeves survived. Cassandra testified that Taylor was her drug dealer. She stated that she, Sherry, Graham and Reeves had confronted Taylor at his home the day before the shooting because Taylor had failed to deliver drugs they had purchased. The confrontation turned physical and Taylor eventually said he was "gonna make it right."

The next day, Taylor texted Cassandra to meet him on Houston Road, a spot where they had previously exchanged drugs.[3] Cassandra, Sherry, Graham, and Reeves went to meet Taylor to get the drugs. Cassandra saw Taylor waiting there in a white SUV. Cassandra heard gunfire and woke up in the hospital where she identified the shooter as Taylor and told police where he lived.

---

[2] Because Sherry and Cassandra have the same last name, we refer to them by their first names. No disrespect or familiarity is intended.

[3] The day of the shooting, a message was sent from Cassandra's phone to a burner phone at about 12:45 p.m. that said, "so everything is good for you to meet us at the Road Ranger, right?" At 2:15, a message from Cassandra's phone to the burner phone said, "We're out. Just picked John up. Ready to meet." The last message from Cassandra's phone to the burner phone was at 2:24 and read, "Ro, with Sherry. Where are you?" Taylor went by the name "Romel" and Cassandra called Taylor "Ro."

Reeves was also interviewed at the hospital. He stated he had been in a fight with Taylor the day before.[4] He had been with the other three victims who went to Houston Road. Reeves said he saw someone wearing a hoodie, whom he later identified as Taylor, reach into his waistband, pull out a gun and begin firing. Reeves was shot in the hand and played dead. A detective showed Reeves some photo lineups, which did not include Taylor, and Reeves did not identify anyone in those lineups. After the second photo lineup, Reeves told the detective, "[g]ive me a couple of days and I'll find out who did this." The next day, a detective showed Reeves another photo lineup which included Taylor. Reeves identified him immediately and initialed beside Taylor's picture.

Police began to search for Taylor who was not at his home. They determined Taylor and his girlfriend, Kaneisha Huff ("Huff"), owned a white Mazda van ("the van"), which was financed by J.D. Byrider ("Byrider") who was the lienholder on the van. According to Cassandra, Taylor's van was not the white SUV Taylor was in at the time of the shooting. Taylor had signed an agreement with Byrider allowing Byrider to place a GPS tracking device on the van that enabled Byrider to locate it at any time. Officers requested the GPS data. Byrider gave law enforcement the van's current location and a web link to track it.

Using the GPS tracking data, officers were able to locate and stop the van on I-44 in Sullivan, Missouri, as it was returning from an overnight drive to Chicago.[5] Taylor was not in the van, but officers located Huff, Latisha Cocroft ("Cocroft") and Cocroft's thirteen-year-old daughter, ("S.G.") in the vehicle. S.G. was later interviewed at Kid's Harbor. The interview was recorded and during the interview, S. G. said Taylor, who was at Cocroft's apartment on January

---

[4] The testimony of Deonsha Robinson, a friend of Taylor's, was also introduced at trial. She testified that on the day before the shooting, Taylor told her some people came over to his house and had threatened him over a drug deal. Robinson testified that Taylor was mad when telling her about it. Curtis Winters, a neighbor of Taylor's, also testified that the night before the shooting, Taylor came over to his house and said someone had been to his house to rough him and his girlfriend up. Taylor was upset and wanted Winters to give him a ride to find the people.

[5] The State and Taylor "stipulate[d] to the fact that [Taylor] left the State of Missouri and travelled to the city of Chicago, Illinois in [the] evening of January 11, 2018/early morning hours of January 12, 2018."

11, told her that he was going to be accused of doing something, but that he didn't do anything wrong. Taylor told S.G. that if the police asked her about him, S.G. should tell them, "[he] got here at 1:00." S.G. understood Taylor was asking her to lie for him about his whereabouts.

Prior to trial, Taylor filed two motions to suppress. One sought to suppress any evidence taken "in connection with the stop, search, seizure, detention of persons, interviews, subsequent searches of [the van], materials found within the [van], [and] Latisha Cocroft's apartment[.]"[6] This motion, in relevant part, alleged that "[w]ithout seeking a search warrant, [law enforcement] obtained the GPS information and the tracking information on the [van] and the web link to the [van] in real time so the police could follow the [van]'s movements in real time."

The second motion sought to suppress the identification made by Reeves because the circumstances surrounding the out-of-court identification were "inherently suggestive[.]"[7] Both motions to suppress were taken with the case during the bench trial.

The trial court denied both motions to suppress. The trial court found Taylor guilty of two counts of second-degree murder, two counts of first-degree assault, and four counts of armed criminal action. Taylor appeals in two points.

## Discussion

### Point 1

In point 1, Taylor argues "[t]he trial court erred in overruling [Taylor's] motion to suppress the evidence that was found as a result of the unlawful GPS search of [Taylor's van], including historical location data ostensibly tying him to the shootings, and the statement of [S.G.] who was a passenger in the [van] when it was finally stopped, and in admitting the evidence at trial over his objection[.]" The only evidence Taylor specifically identified in this

---

[6] The van was seized and officers applied for and were granted a search warrant to search the van. Inside the van, officers located four phones and applied for search warrants to search those phones. Officers later obtained search warrants for Taylor's cell phone and burner phone. They also obtained data from Cassandra's phone.

[7] Taylor does not challenge Cassandra's identification of him as the shooter on appeal.

4

point as being erroneously admitted is (1) the historical location data of the van and (2) S.G.'s statements.

We confine our analysis to a review of whether the trial court erred in denying the motion to suppress and in admitting the historical location data and S.G.'s statements as evidence. To interpret Taylor's point to encompass *all* evidence derived from the alleged unlawful GPS data search would require us to play the role of advocate and search the record to (1) identify which of the 102 trial exhibits and testimony were obtained as a result of the search; and (2) identify whether Taylor objected to the admission of any of that evidence at trial. Performing such a task would require us to play the role of advocate. This we decline to do. "This court will not act as an advocate by scouring the record for facts to support Defendant's contentions." **State v. Myers**, 619 S.W.3d 578, 585 (Mo. App. E.D. 2021) (quoting **State v. Bell**, 266 S.W.3d 287, 290 (Mo. App. E.D. 2008)).

Before addressing whether the trial court erred in admitting S.G.'s statements, we must decide if Taylor preserved his claim. Generally, when a motion to suppress evidence is denied, and the evidence is offered, a defendant must object at trial to preserve his contentions for our review. **State v. Hughes**, 563 S.W.3d 119, 124 (Mo. banc 2018). "On the other hand, if a defendant not only fails to object but also states 'no objection' or stipulates to the admission of otherwise objectionable evidence, the defendant affirmatively waives any error in its admission, plain or otherwise." **Id.** at 125.

Taylor does not point us to anywhere in the record where he objected to S.G.'s in-person testimony or her recorded Kid's Harbor interview, State's Exhibit 102. In fact, Taylor filed a stipulation agreeing that S.G.'s recorded interview was being admitted as evidence and that Taylor "is making no further objection to the admission of this evidence." By filing a stipulation agreeing to the admission of this evidence, Taylor waived his claim that those statements should

have been suppressed as evidence. By failing to object to S.G.'s in-person testimony, Taylor failed to preserve his claim on appeal regarding that testimony.[8]

Taylor's point also challenges the admission of the historical GPS data of his van. State's Exhibit 64 was the GPS data of Taylor's van provided by the lienholder. State's Exhibit 64 was *only* admitted for purposes of the motion to suppress and was not offered or admitted as evidence during trial:

> THE COURT: And then the State indicated and I believe the Defense agreed that Exhibits 64 and 65 and 69 are admitted for purpose of the motion to suppress, is that correct, [Defense counsel]?
>
> [Defense Counsel]: Yeah, 63 -- excuse me. 64 and 65 for the motion to suppress evidence and 69 for the motion to suppress identification, Your Honor.
>
> THE COURT: Thank you.
>
> . . . .
>
> [The State]: Okay. Your Honor, for purposes of the motion to suppress, I would ask that Exhibit 64 be admitted so that the [c]ourt can -- 64 is the GPS done from Byrider.
>
> [Defense Counsel]: For the purposes of the suppression, we have -- the motion to suppress, we have no problem – no objection, Your Honor.
>
> THE COURT: State's Exhibit 64, the GPS location data off the [van], is admitted for purpose [sic] of the motion to suppress.

---

[8] Missouri courts recognize a narrow exception to the general rule that a party waives his claim to the admission of evidence where he states "no objection" or files a stipulation where there is a mutual understanding that the "no objection" voiced by defense counsel meant no objection other than the motion to suppress. *See* e.g., ***Hughes***, 563 S.W.3d at 125; ***State v. Baker***, 103 S.W.3d 711, 716-17 (Mo. banc 2003); ***State v. Martin***, 79 S.W.3d 912, 915 (Mo. App. E.D. 2002). "The 'mutual understanding' exception to the general rule is narrow, rare, and factually-based and requires 'some action or actions by the trial court or the prosecutor that occurred after the trial began to find a mutual understanding.'" ***State v. Loggins***, 445 S.W.3d 105, 110 (Mo. App. E.D. 2014) (quoting ***State v. Williams***, 411 S.W.3d 275, 277-78 (Mo. App. S.D. 2006)). We do not apply the mutual understanding exception in this case because we see nothing in the record indicating there was a mutual understanding that Taylor intended to preserve his objection to S.G.'s testimony based on the grounds asserted in his motion to suppress. In fact, the stipulation stated, in relevant part, that "defense is not waiving their objection to the court's previous ruling [on Taylor's Objection to State Admitting Child Statements Under 491.075 RSMo.] and is preserving their right to appeal the court's ruling on that issue, but is making no further objection to the admission of this evidence." The stipulation did not state that Taylor intended to retain his objection based on the claim raised in the motion to suppress. If the parties had a mutual understanding that Taylor intended to retain his objection to S.G.'s statements based on the motion to suppress, they did not clearly communicate that intent in the record.

6

Evidence admitted for a limited purpose may only be considered for that purpose, and in a bench trial, we presume the trial court did just that. *See* **Teasdale & Assocs. v. Richmond Heights Church of God in Christ**, 373 S.W.3d 17, 25 (Mo. App. E.D. 2012); **State v. Coaston**, 609 S.W.3d 527, 528 (Mo. App. S.D. 2020) ( "[I]n bench-tried cases, we generally presume the trial court does not give weight to erroneously-admitted evidence unless the trial court relied on the inadmissible evidence in making its findings.").  The trial court was never asked by either party to admit the GPS location data for any purpose other than the motion to suppress, and no objection was ever made since it was not admitted as trial evidence. We have no reason to believe the trial court considered the historical GPS data for any other purpose other than ruling on the motion to suppress.  We cannot convict the trial court of erroneously admitting evidence where the record does not show the evidence was ever admitted.[9]  Point 1 is denied.

*Point 2*

In his second point, Taylor argues the trial court erred in overruling his motion to suppress the identification made by Reeves and failing to exclude Reeves' in-court identification "because the identification was tainted by an impermissibly suggestive procedure . . . since before the second lineup, [Reeves] told the detective that he would 'find out who did this,' and [Reeves] knew [Taylor], as he had worked with him for about thirty days."

_____

[9] Taylor's brief states:

> The GPS printout also showed that the [van] was either in St. Robert or Waynesville two hours before the shooting—the printout said the [van] was in St. Robert, but the zip code listed was for Waynesville. The detectives believed that the St. Robert address was correct, and included that information on a search warrant for the [van].

Even if the trial court had considered the historical GPS data as trial evidence, Taylor makes no attempt to explain how he was prejudiced by the data placing his co-owned van, which was not the vehicle used in the crime, at St. Robert two hours before the shooting that occurred on Houston Road.  Taylor does not explain how close these GPS data points were to the crime scene, so it is unclear how this evidence was prejudicial.

Taylor never presented this argument to the trial court, therefore, the claim is not preserved for our review.  Taylor's motion to suppress Reeves' identification argued the identification was impermissibly suggestive because Reeves "did not have [an] adequate opportunity to observe the perpretrator(s) of the offense and said witness(es) were in physically altered states in that they were high and nodding in and out of consciousness."  Now, before us on appeal, he argues the lineups were impermissibly suggestive because Reeves told the detective he would "find out who did this" and because he knew Taylor from work.  But Taylor never presented this argument to the trial court in the motion to suppress or through any objections made to the trial court.  "We will not convict a trial court of error for reasons not presented to it and instead argued for the first time on appeal."  ***State v. West***, 548 S.W.3d 406, 413 (Mo. App. W.D. 2018).  By failing to present the trial court with the argument he now raises on appeal, Taylor has failed to preserve this issue for our review.[10]  Point 2 is dismissed.

## CONCLUSION

The trial court's judgment is affirmed.

MARY W. SHEFFIELD, P.J. – OPINION AUTHOR

GARY W. LYNCH, C.J. – CONCURS

DON E. BURRELL, J. – CONCURS

---

[10] "A point on appeal must be based upon the theory voiced in the objection at trial and a defendant cannot expand or change on appeal the objection as made." ***State v. Goins,*** 306 S.W.3d 639, 647 (Mo App. S.D. 2010).