

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | WD85247 |
| | ) | |
| MARQUS ANDREW WILSON, | ) | Opinion filed:  October 24, 2023 |
| | ) | |
| Appellant. | ) | |

### APPEAL FROM THE CIRCUIT COURT OF
### PLATTE COUNTY, MISSOURI
### THE HONORABLE THOMAS FINCHAM, JUDGE

Division Four:  Gary D. Witt, Chief Judge, W. Douglas Thomson, Judge
and Andrea R. Vandeloecht, Special Judge

Marqus Andrew Wilson ("Wilson") appeals his conviction of robbery in the first degree following a jury trial in the Circuit Court of Platte County ("trial court"). Wilson raises two points on appeal.  He first claims the trial court erred in failing to sustain his motion to suppress evidence and statements obtained incident to his arrest ("motion to suppress") because law enforcement did not have probable cause to arrest and subsequently interview him, as law enforcement only had an anonymous tip corroborated only by a tentative witness identification directing them to Wilson.  Wilson's second point on appeal asserts the trial court erred in

overruling his motion for new trial because he was denied due process and a fair trial due to the State's suppression of material evidence favorable to Wilson, specifically a video-recorded interview of his co-defendant ("Co-Defendant"). We affirm.

## Factual and Procedural History[1]

In the early morning hours of October 30, 2018, a robbery was reported at a Waffle House located in Platte County, Missouri. Two suspects, one armed with a gun and the other a knife, had entered the business, demanded money, and then fled. DNA evidence, a shell casing, and a bullet fragment were recovered from the scene. Law enforcement was also provided surveillance footage of the robbery by Waffle House.

The day after the robbery, law enforcement received an anonymous tip from Crime Stoppers. The tip "provided a possible suspect of Marqus Wilson, provided his date of birth, provided his home address, stated that he was living with his mother." The tip also named two other suspects, Suspect 2 and Suspect 3. Additionally, the Facebook pages of Wilson and Suspect 3 were provided. Wilson's Facebook account went by the name "Suqrm Nosliw," (which was *almost* his name spelled backwards) while Suspect 3's went by "Crack Mike."

A second anonymous tip from Crime Stoppers was received three days later on November 3, 2018. This tip provided Facebook photographs of the previously-

---

[1] "On appeal from a jury-tried case, we view the facts in the light most favorable to the jury's verdict." *State v. Lindsey*, 597 S.W.3d 240, 242 n.2 (Mo. App. W.D. 2019) (citation omitted).

2

named individuals. Through a comparison of the tipster-provided photograph of Wilson and a Missouri Department of Revenue ("DOR") photograph, law enforcement confirmed both photographs were of Wilson. The photographs of the other individuals were also verified through a similar comparison to known photographs in the police database.

Also provided by this tip were screenshots of Facebook messages between the "Crack Mike" and "Suqrm Nosliw" accounts. Included in these screenshots was a conversation shortly before the robbery, where Suspect 3 stated he needed money and "was going to see but [sic] mugging someone." Wilson had responded "me, too, let's link[,]" followed by a reply from Suspect 3 stating "well, in a little, 'cause still thinking about what we should do, Town Topic or Waffle House." Wilson had replied he was "ready whenever[.]" Messages from after the robbery were also included in the screenshots, wherein Suspect 3 stated "look up Waffle House, I tried ditching car because it has your DNA but cops have got it . . . ." Suspect 3 also told Wilson he may "go to prison, cops are hot[.]" The messages further mentioned a "felony," that a "gun was shot in the store," and not wanting to go down for fourteen or fifteen years "on a dope-ass car ride."

Law enforcement then took formal statements from two victims of the robbery, Waffle House Employees 1 and 2. Employee 1 described both suspects as "younger, early 20s, the one with the gun was taller, a little bit taller. The one with the knife . . . was shorter." She stated their faces were covered, but not entirely, and explained "how the one with the gun appeared more calm for some reason but

3

. . . the one with the knife was acting crazy, jumped on the booth." Employee 1 recounted how the latter suspect had waved the knife at her, and described the knife as "pointed to a triangle like a dagger and serrated." The surveillance footage supported Employee 1's story. While Employee 1 was unable to identify Wilson when presented with a photo lineup, Wilson's appearance was consistent with her description of the suspect with the knife based on identifiers she provided. Accordingly, Wilson was not eliminated as a suspect.

Employee 2 was later interviewed and her story of the robbery was also consistent with the surveillance footage:

> She stated they walked in, she didn't think it was a real gun, she wanted to act tough, the suspects demanded money, she said you're going to have to shoot me. Then the suspect armed with the gun literally shot in the store and then she said she got really scared and basically hid down and then ran away.

Employee 2 was also shown a photo lineup: "She immediately pointed to [Wilson] and her wording was something along the lines of, you know, I'm not saying that I recognize someone but if I had to choose someone it would be him and he was the one armed with the knife."

An "investigative arrest order"[2] was subsequently issued for Wilson, leading to his arrest on November 21, 2018 at the same address provided by the first anonymous tip. After being Mirandized, Wilson waived his rights and agreed to speak to law enforcement. He then gave a video-recorded interview. When shown

---

[2] The record does not include a copy of the "investigative arrest order" or explain the process utilized to secure or issue same.

photographs of the Facebook accounts of Suspect 3, Suspect 2, and his own, he identified each individual's accounts. He also confirmed the "Crack Mike" and "Suqrm Nosliw" accounts were Suspect 3's and his Facebook account names, respectively.

While initially denying that he exchanged Facebook messages with Suspect 3, he ultimately confirmed he had the conversations with Suspect 3 before and after the robbery as depicted in the screenshots received in the second anonymous tip. Wilson ultimately confessed to his involvement in the robbery, stating it was him and Co-Defendant, not Suspect 2 as had originally been thought. However, he minimized his role in the robbery, stating he was forced into participating. Wilson was held in custody until an arrest warrant was issued the following day, and he was charged with one count of the class A felony of robbery in the first degree.

On April 9, 2019, Wilson filed his motion to suppress "any and all evidence and statements obtained as a natural consequence of [his] . . . unlawful detention and arrest," as well as "any and all evidence concerning any and all alleged statements, whether oral, written, videotaped, or otherwise recorded, which the state intends to use against [Wilson.]" The basis for the motion was Wilson's claim that there was no probable cause to detain and arrest him due to the lack of reliability and corroborating information concerning the anonymous tips. He therefore argued his arrest and subsequent interrogation violated his United States and Missouri constitutional rights.

A hearing on the motion to suppress was held on May 3, 2019. The sole witness at the hearing was the case detective assigned to investigate the robbery, who recounted the above-described investigative steps that led to the arrest and interview of Wilson. The case detective also testified he conducted his own computer checks to verify the provided information. He first verified the date of birth provided for Wilson through DOR, then compared the provided Facebook photographs to known photographs through "some sort of booking system or DOR to verify that they were the same people." After matching the photographs, including those of Wilson, the case detective testified he conducted the interviews of Employee 1 and Employee 2. He also reviewed the surveillance footage, which depicted a suspect armed with a knife. He testified he then "had enough for an investigative arrest order[,]" and Wilson was detained a few days later. After hearing additional argument from counsel, the trial court denied the motion to suppress.

Jury trial commenced on October 18, 2021 and concluded on October 21, 2021. During direct examination of the case detective, the State sought to introduce State's Exhibit 4 ("Exhibit 4"), the redacted version of Wilson's video-recorded interview. Upon the State's offering of Exhibit 4 into evidence, defense counsel stated, "No objection to this version of the recording." The trial court received Exhibit 4 into evidence "without objection" and Wilson's interview was played for the jury. Additionally, at multiple points during the case detective's

testimony, including during cross-examination, details from an interview of Co-Defendant were discussed.

Wilson testified in his own defense. He provided his own version of the robbery, stating that Co-Defendant forced his involvement. Wilson testified that on the night of the robbery, Co-Defendant picked him up at 2:00 AM. Wilson testified he assumed they would drive around for awhile or go back to Co-Defendant's house, but they instead pulled into a parking lot adjacent to and behind the Waffle House. Wilson testified Co-Defendant pulled out a firearm and asked Wilson if he wanted to rob the place. He stated he thought Co-Defendant was joking, but Co-Defendant got "deadly serious," pointed the gun at Wilson, and asked him if he thought it was a joke. Co-Defendant then reached into the back seat, grabbed a hoodie and a knife, threw them in Wilson's lap, and told him to tie the hoodie around his face, all while pointing the gun at him. Co-Defendant then yanked him out of the car at gun point and escorted him around the back of the Waffle House. Wilson claimed he only robbed the Waffle House armed with a knife "due to being in fear of [his] life[.]"

The jury ultimately found Wilson guilty of robbery in the first degree. Wilson timely filed a motion for new trial, raising several issues, including the denial of his motion to suppress and an alleged nondisclosure of the recorded interview of Co-Defendant. Concerning the denial of his motion to suppress, the only piece of evidence Wilson specifically mentioned within his motion was his recorded interview that was played for the jury. A hearing on Wilson's motion for

new trial was held on January 12, 2022. The trial court denied the motion, and subsequently sentenced Wilson to twenty-five years imprisonment in the Missouri Department of Corrections.

Wilson appeals.

## Point I

In his first point on appeal, Wilson claims error with the trial court's failure to sustain his "motion to suppress evidence and statements obtained incident to or arising from unlawful arrest". In particular, Wilson alleges his arrest and subsequent interview by law enforcement violated his constitutional rights due to the lack of probable cause "because police only had an anonymous tip uncorroborated by a tentative identification[.]" Wilson's claim fails.

At its core, Wilson's argument concerns what he believes is the erroneous admission of his video-recorded interview with law enforcement, Exhibit 4. He reasons that without following up on the uncorroborated anonymous tips, the arrest and video-recorded interview would not have occurred. However, the State contends Wilson has waived any complaint concerning the admission of Exhibit 4, the redacted version of Wilson's interview. As the source of this waiver, the State points to Wilson's statement of "[n]o objection" to Exhibit 4 when the State offered it for admission at trial. We agree with the State.

"[I]t long has been the law in Missouri that filing a pretrial motion objecting to the admission of evidence is not sufficient to preserve for appeal any error in failing to exclude it." *State v. Hughes*, 563 S.W.3d 119, 124 (Mo. banc 2018)

8

(citation omitted). "Because a ruling on a motion to suppress is interlocutory, a defendant must make 'an objection at the time the evidence is offered for admission at trial' to preserve the issue of its admissibility for review." *State v. Tillitt*, 552 S.W.3d 571, 577 (Mo. App. W.D. 2018) (quoting *State v. Barriner*, 210 S.W.3d 285, 296 (Mo. App. W.D. 2006)). "This is because the trial judge 'should be given an opportunity to reconsider his prior ruling against the backdrop of the evidence actually adduced at trial.'" *Hughes*, 563 S.W.3d at 124 (quoting *State v. Fields*, 636 S.W.2d 76, 79 (Mo. App. 1982)). "Even when the defendant fails to object to the admission of evidence at trial, erroneous admission of evidence is normally reviewable for plain error under Rule 30.20[.3]" *Id.* at 125. However, plain error review may be waived:

> Plain error review would apply when no objection is made due to "inadvertence or negligence." *State v. Mead*, 105 S.W.3d 552, 556 (Mo. App. 2003). Plain error review is *waived* when "counsel has affirmatively acted in a manner precluding a finding that the failure to object was a product of inadvertence or negligence." *Id.* Plain error review *does not apply* when "a party affirmatively states that it has no objection to evidence an opposing party is attempting to introduce" or for a trial strategy reason. *Id.* at 556.

*State v. Johnson*, 284 S.W.3d 561, 582 (Mo. banc 2009) (emphasis added).

Here, Wilson did not merely fail to object when the State offered Exhibit 4 for admission at trial; he *affirmatively stated* he did not object:

> [THE STATE]: Your Honor, at this time the State offers State's Exhibit 4 into evidence.
>
> THE COURT: Any objection?
>
> [DEFENSE COUNSEL]: *No objection* to this version of the recording.

---

[3] All rule references are to Missouri Supreme Court Rules (2023).

THE COURT: Show State's 4 is received *without objection*. (Emphasis added). Moreover, defense counsel *utilized* Wilson's interview by arguing it corroborated Wilson's testimony. During his opening statement, defense counsel referenced portions of Wilson's interview where Wilson had discussed events prior to the robbery and Co-Defendant's alleged threats, telling the jury that "[a]s you watch that interview I want you to remember those parts of it because it will be consistent with my client's testimony whenever he testifies to you in trial." And, at several points during closing argument, defense counsel discussed the similarities between Wilson's testimony and his interview statements, going so far as to tell the jury to *seriously consider* Wilson's interview: "You saw him on the stand, the [sic] saw him in the interview and you all are the judge of credibility in this case and I ask that you take very seriously the interview he did and compare it with his testimony here yesterday because that was not easy for him."

Accordingly, we find Wilson has waived any review of the admissibility of his video-recorded interview, plain or otherwise. Consequently, Wilson has also waived any review of the trial court's failure to sustain his motion to suppress, given the interview and the statements made therein were the *only* evidence discussed within his post-trial claim concerning his motion, as well as his arguments here on appeal.

Point I is denied.

**Point II**

Wilson's second point on appeal asserts the trial court erred in overruling his motion for new trial. Wilson contends he was denied due process and a fair trial because of the State's suppression of a video-recorded interview of Co-Defendant which is material and favorable to him, a violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). We disagree.

> We review the trial court's denial of a motion for new trial for abuse of discretion. *State v. Parker*, 208 S.W.3d 331, 335 (Mo. App. 2006). "The trial court abuses its discretion when its ruling is clearly against the logic of the existing circumstances and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Id.*

*State v. Shore*, 344 S.W.3d 292, 298 (Mo. App. S.D. 2011).

In his motion for new trial, Wilson alleged his counsel received a package of discovery discs from the Prosecutor's Office on October 22, 2021, after the trial had concluded. It was also alleged that the postmark on the package indicated it had been mailed on October 18, 2021, the first day of trial. Among other discs within the package was a disc containing the recorded interview of Co-Defendant taken on November 30, 2018, nearly three years earlier. Wilson claimed "there had been no prior disclosure of that disc, or the contents thereof." Wilson further argued in his motion that the disc contained exculpatory information, namely statements from Co-Defendant "that were in line with [Wilson]'s case-in-chief and argument at trial." It was also argued that "numerous impeaching statements" were contained in the interview, specifically statements that would impeach the case detective's testimony and statements by Co-Defendant submitted by the State

11

during trial. Further, he claimed there were several instances where Co-Defendant indicated he would assist if treated leniently.

At the hearing on Wilson's motion for new trial, the State argued it had previously disclosed the video during the first rounds of discovery, when Wilson had different counsel. The State specifically recalled disclosing the disc to Wilson's previous counsel more than two years earlier, in May of 2019:

> THE COURT: You had said that this disc was previously disclosed to prior counsel. Can you tell me when that disclosure was and to what prior counsel?
>
> [THE STATE]: You know, when [previous counsel] was in the first case in, gosh, dare I say 2019, and the fact I know there was disclosure because my understanding is she had a problem getting the disc to open initially and our discovery clerk at the time in May of 2019 recopied the discovery discs that was requested by the public defender's office and I believe there was an appointment for the public defender's assistant to actually come to our office and physically pick up the disc. That apparently didn't happen so our office overnighted it to the public defender at that time, which is actually a little bit unique in the discovery process to have the public defender offer to come and personally pick up something and I do know that at the time there was a slow process in getting it to open but my understanding is when we disclosed it it did open.
>
> THE COURT: And that was back in, around May of '19?
>
> [THE STATE]: May of 2019, Judge.
>
> THE COURT: All right. Thank you.

The State argued that the only reason Wilson received a copy of the disc at issue immediately after his trial was due to a request by *Co-Defendant's* attorney for the disc, and the subsequent mistaken delivery of the disc by a discovery clerk in the prosecutor's office to *both* Wilson and Co-Defendant's attorneys. It was further argued that Wilson and his counsel had the reports referencing the interview, meaning they had possession of a secondary reference to the video's existence, as

well as the disc itself, since the original discovery. In response, defense counsel argued there was no indication Wilson's previous counsel had received the disc. Counsel stated he had received the previous counsel's file and had discussed the issue with her prior to the hearing yet knew nothing of the disc. Wilson failed to call his prior counsel to testify at the hearing regarding the disclosure of this material and relied solely on current counsel's representations that it had not been disclosed until after the trial had concluded.

By arguing that material evidence favorable to him was suppressed by the State, Wilson is alleging a violation of *Brady v. Maryland*. "In *Brady*, the Court held that 'suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.'" *State v. Holden*, 278 S.W.3d 674, 679 (Mo. banc 2009) (quoting *Brady*, 373 U.S. at 87, 83 S.Ct. 1194). More specifically,

> [i]n order to make a successful *Brady* claim, the defendant has the burden to show, (1) the evidence at issue is favorable to the defendant, either because it is exculpatory or impeaching; (2) the evidence was suppressed by the State, either willfully or inadvertently; and (3) the defendant was prejudiced as a result of the suppression of the evidence, i.e., that the evidence is material.

*McDaniel v. State*, 460 S.W.3d 18, 24 (Mo. App. E.D. 2014) (citations omitted).

> Evidence is material "only when there is a reasonable probability that the result of the proceeding would have been different if the evidence had been disclosed to the defense." *State v. Salter*, 250 S.W.3d 705, 714 (Mo. banc 2008). *Brady*, however, only applies in situations where the defense discovers information after trial that had been known to the prosecution at trial. *Id. If the defendant had knowledge of the evidence at the time of trial, the state cannot be faulted for non-disclosure.[] Id.*

13

*Holden*, 278 S.W.3d at 679-80 (emphasis added) (footnote omitted).

Wilson bore the burden of proving a *Brady* violation and he failed to meet that burden. At the time of trial, Wilson had knowledge of Co-Defendant's interview. Indeed, *defense counsel cross-examined* the case detective on details from Co-Defendant's interview, including Co-Defendant's admission that he supplied the knife to Wilson and was involved in previous robberies, as well as Co-Defendant's stated reason for being involved in robberies. Additionally, not only did the State assert it had previously disclosed the interview to defense counsel, the State also argued Wilson and his counsel had the reports referencing the interview since the original discovery. Wilson offered no evidence at the motion hearing to rebut either of these contentions; no argument was even offered against the latter. The trial court did not abuse its discretion in denying Wilson's motion for new trial.

Point II is denied.

## Conclusion

For the foregoing reasons, Wilson's conviction is affirmed.

_____
W. DOUGLAS THOMSON, JUDGE

All concur.